Edmond **L.** Reed, Plaintiff-Appellee, v. Wesley **H.** Johnson, et al., Partners, d/b/a Johnson Bros., Defendants-Appellants.

Gen. No. 11,901.

Second District.

January 20, 1965.

Rehearing denied February 15, 1965.

Berry & Simmons, of Rockford, for appellants.

Pedderson, Menzimer & Conde, of Rockford (Dale F. Conde, of counsel), and Wiseman, Hallett & Mosele, of Alton, for appellee.

MORAN, J.

Appellants, three brothers conducting a masonry business as a partnership, appeal from a judgment entered upon a jury verdict for $52,500 against them in favor of plaintiff-appellee, a steel construction worker, in a suit under the Illinois Structural Work Act, Ill Rev Stats ch 48, secs 60 and 69, (1961).

In August of 1961, a new building was being constructed in a shopping center on East State Street in

Rockford, Illinois. The building was divided lengthwise by a one-story masonry wall running north and south. The west part of the building was to be occupied by a drug store and the wall in question was the east wall of the drug store area. The wall was constructed by defendants, who used a metal scaffold running the entire length of the wall. The scaffold was placed on the dirt floor of the drug store area. It was constructed from units rented by defendants. Each unit consisted of two end members, fifty inches wide and five feet high connected together by iron rods so that the end members were seven feet apart. The entire scaffold consisted of several units set along the wall with other units set upon them so that the entire scaffold was ten feet high and approximately 140 feet long. Ten-inch wooden planks, sixteen feet long were laid across the upper end members to provide a floor for the masonry workers to stand on. As the wall approached its height of sixteen feet two and one-half inches at the time of the accident in question, the workers increased the height of their standing area by laying planks upon concrete blocks placed upon the ten-foot scaffold. There was a conflict in the evidence as to whether all of this scaffold was removed when defendants completed construction of the wall. Defendants' evidence was that the entire scaffold was taken down. Plaintiff's evidence was that certain units were left standing, including particularly one unit seven feet long and ten feet high located near the midpoint of the wall.

When the defendants left the drug store area, the steel workers came in to place steel beams running (north and south) through the center of the drug store area. When the beams were set, then steel bar joists were to be placed running from the east wall to the beam and from the beam to the west wall. The steel workers had a crane which was used to

70

lift the beams and joists but they had no ladders or other scaffold. The men used a ladder which they found on the job, and they also rode the crane to get to the beams.

During the first day the steel men were on the job, the plaintiff was working on a joist when he lost his balance and fell. He was able to catch on to the lowest member of the joist and swung back and forth until the joist steadied. He then dropped to the ground. There was a conflict in the evidence as to whether he was wearing the heavy steel worker's tool belt when the incident occurred. Plaintiff testified he was not injured and that he went on with his work. On the next day, August 4, 1961, the plaintiff was assisting in placing the joists between the center beam and the east wall. He was standing on the east wall near its midpoint and had occasion to go down to the ground. He testified he decided to get down by using the section of scaffolding located there, and that he stepped from the wall down to the planks on top of the scaffold. One of the scaffold planks was apparently not completely over the cross bar and it slipped off inside the metal scaffold and plaintiff fell to the ground injuring his knee and back.

During the trial, medical evidence was offered to the effect that two intervertebral discs in the lumbar area were injured and were removed surgically. The doctors felt plaintiff could carry on a "normal everyday existence" but could not do work involving over forty pounds of lifting. He could not continue as a steel worker.

Appellants contend that the verdict is contrary to the manifest weight of the evidence and is based upon an impossible factual situation. They also contend that reversible error was committed in that plaintiff's counsel introduced the topic of insurance in the closing argument; that improper instructions were given;

71

that proper instructions were refused; and that their motion for directed verdict and their post-trial motion should have been allowed.

Appellants argue that the evidence establishes that they had previously removed all the scaffold along the east wall and that the verdict is therefore against the manifest weight of the evidence. The three defendants, two of their employees and the owner of the building testified that all of the east wall scaffold was taken down before the steel workers came in. Defendants urge that if someone else borrowed their scaffold materials which were still on the job and put the scaffold up again, they should not be liable for the injury received by plaintiff. On the other hand, plaintiff's witnesses, Wilson, Morgan and Anderson and the plaintiff himself, all testified that the scaffold was standing by the east wall when they arrived. It is suggested that since defendants had the responsibility of patching the wall around the ends of the bar joists, they had reason to leave portions of the scaffold in place. We believe that this was a fact question properly left to the jury, and the jury's verdict indicates that they resolved the question in favor of the plaintiff and we see no occasion to disturb that finding.

The recent decision of Lawler v. Pepper Const. Co., 33 Ill App2d 188, 188 NE2d 687, involves a somewhat similar factual situation. In neither case was there proof that any other person reconstructed the scaffold, and, since it was there at the time of injury, it is reasonable to infer that it was left in place by defendants.

Defendants-Appellants also contend that plaintiff's version of the occurrence is impossible, because he could not step from a sixteen-foot wall to a ten-foot scaffold. Defendant Lester Johnson testified that he saw plaintiff shortly after occurrence and

72

plaintiff stated he was injured while jumping from a bar joist down to some scaffold material in the back part of the building. Defendants argue that such use of the scaffold could not be foreseen and was unreasonable. Contributory negligence is not a defense under the act and whether plaintiff stepped or jumped to the scaffold is immaterial, if, as the jury by its verdict determined, he was engaged on the scaffold and was injured as the proximate result of the scaffold being defective.

■ Defendants urge that plaintiff was not using the scaffold as a scaffold and, therefore, the Scaffold Act does not apply. They cite Thon v. Johnson, 30 Ill App2d 317, 174 NE2d 400, where an electrician was injured while standing on planks which the masonry workers had put together as a cement form. It was there held that the form was not a scaffold even though the electrician was standing on it. We feel that the Thon case is not applicable here, where the materials in question were specifically constructed for scaffold purposes, had been used by defendants for scaffold purposes and were being used by plaintiff to get from the wall to the ground when he was injured. See Fetterman v. Production Steel Co. of Illinois, 4 Ill App2d 403, 124 NE2d 637. The Scaffold Act extends protection to persons employed or engaged on a ladder or a scaffold. The plaintiff was engaged at the time of his fall in getting down from the wall. It was not unforeseeable that steel workers, who were expected on the job, would be moving from the wall to the ground. If the defendants left the scaffold standing beside the wall, they should have foreseen that plaintiff and his fellow workers might use it.

■■ The trial court gave two instructions at the request of plaintiff pertaining to scaffolds. One was in the language of the statute and the other stated that for plaintiff to recover he must prove; first, that

73

defendants violated the act; second, that plaintiff was injured; and, third, that the violation or failure of the defendants was the proximate cause of the plaintiff's injury. These instructions were proper.

The trial court refused to give certain instructions offered by the defendants and they urge this refusal as reversible error.

■■ Defendant's instruction 6 sets forth six elements which the jury must find in plaintiff's favor before returning a verdict for him. One of the elements stated was:

"4. That the defendants had wilfully erected or constructed this scaffolding in such unsafe, unsuitable and improper manner."

This is not the law under Section 69 of the Structural Work Act. It is a willful violation of this act or willful failure to comply with its provisions that gives a right of action, not the willful erection or construction of the scaffold. The instruction was properly refused.

■ Instruction 7 tendered by appellants states that although contributory negligence is not a defense, the jury could consider the plaintiff's conduct in determining whether or not the scaffolding in question was erected safely, suitably and properly for the ordinary and reasonable anticipated uses thereof. Also, that if the jury should find plaintiff's conduct was such that an unreasonable and unforeseen use was made of the scaffold and that unreasonable and unforeseen force, violence, pressure or stress was placed upon the scaffold by plaintiff's conduct, they might consider that in determining whether or not the scaffold was in fact safe, suitable and proper. Although the first portion of the instruction might be proper, we believe the latter portion goes too far in singling

74

out evidence and assuming facts as to plaintiff's conduct and that the instruction as tendered was properly refused.

 Instruction number 8 offered by appellants instructed the jury to find for defendants if they found the scaffold to be unsafe because it was in the process of being dismantled. This was not a proper instruction.

It is perhaps regrettable that better methods for properly instructing juries in scaffolding cases have not yet been devised. We doubt that this jury received all the instructions that might properly have been given to guide it in its decision. However, the trial court properly refused the three instructions in question.

 Likewise, it is possible that the Structural Work Act itself, enacted as it was before the Workmen's Compensation Act, is a proper subject for legislative review and clarification. However, we cannot perform here functions that properly fall within the purview of the legislature.

Error is also claimed in this case with reference to the testimony of the witness, Robert Walker. This witness, called by plaintiff, testified that the planks used on the scaffold were sixteen feet long. He had testified at a discovery deposition a week before that the planks were eight feet long. Plaintiff's counsel advised the court he was surprised by the testimony and the court properly permitted plaintiff's counsel to question the witness as to his testimony at the deposition.

Finally, the defendants have urged many objections to remarks made by plaintiff's counsel during closing argument. They urge that these remarks were made to suggest to the jury the existence of insurance. Remarks made referring to defense counsel

when he received this case, such as, "You are sitting in a big office and you are alone and a lot of papers are brought into you and you see there is a new claim filed involving Ed Reed . . . you look at the investigation," or "and then you see that somebody has checked this boy out and he does have a conviction," have nothing to do with the evidence in this case. The most troublesome aspect of the closing argument is contained in the following:

> "Is there any hope here? And you look into it a little and you see what one man is saying and Mr. Lester Johnson did back in September of last year according to his sworn testimony and his deposition was read to you: 'I think it was all down.' He tells that story. That is his sworn version. I believe he is sadly mistaken, and let me say right now there is nothing personal about this. You folks can bring in anything from fifty to one hundred thousand dollars, which is the amount of the ad damnum, which is the right amount here and we are not going to have any personal concern, and the Johnson Bros. don't. There is nothing personal."

> "Mr. Simmons: Now that is objected to. And I want to ask for a mistrial."

> "The Court: Objection overruled."

■ In stating that defendant had no personal concern about the amount of the verdict, counsel clearly and, we think, deliberately implied the existence of insurance.

■ We feel that the court should have sustained the objection and failure to do so constituted prejudicial error. Consequently, the judgment of the Cir-

cuit Court of Winnebago County is reversed and the cause is remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

ABRAHAMSON, P. J. and CARROLL, J., concur.