Robert R. Underwood, Plaintiff-Appellee, v. Pennsylvania Railroad Company, a Corporation, Defendant-Appellant.

Gen. No. 64–108.

Fifth District.

August 31, 1965.

Walker and Williams, of East St. Louis (David B. Stutsman, of counsel), for appellant.

McGlynn & McGlynn, of East St. Louis (James McGlynn, of counsel), for appellee.

GOLDENHERSH, J.

Defendant appeals from the judgment of the Circuit Court of St. Clair County, entered upon a jury verdict in an action brought under the Federal Employers' Liability Act. Defendant contends that the verdict in the amount of $55,000 was excessive, that improper conduct of plaintiff's counsel prevented the defendant's receiving a fair trial, and that the trial court improperly excluded evidence offered by defendant.

The evidence shows that plaintiff was employed by defendant as a brakeman. On July 22, 1962, he was a member of a crew that was engaged in moving cars in and about defendant's Rose Lake Yard, near East St. Louis. In this work, they used an engine and a caboose. Shortly after noon they were ordered to pick up a cut of cars at Rose Lake Yard and take them down to Wiggins Yard, a distance of approximately seven miles. On the trip to Wiggins, plaintiff rode in the caboose alone, and on the return to Rose Lake, he rode with conductor John Jolliff. Jolliff was not called as a witness by either party.

Plaintiff testified that the door of the caboose was hanging from one hinge, and he propped it open with a piece of iron. He did not prop it shut because to do so would require another type of iron, because there was no room between the sill and the bottom of the door. Of eight windows in the caboose, only one was

open, because the other seven were either wedged shut, or nailed shut. The stove in the caboose had been knocked over, and dirt and soot from the stove pipe were scattered on the floor. In the debris were also crusts of bread, ashes and scraps of paper. There were no brushes, brooms or mops in the caboose, but they were available in the shanty in the Rose Lake Yard.

Plaintiff further testified that on the return trip from Wiggins Yard, about 2:30 p. m., while the train was traveling about 15 miles per hour, he was struck in the face by dust particles. At that time the temperature was in the nineties. He finished his tour of duty and upon arriving at his home, he complained to his wife about his eye being full of dirt. His wife removed dirt from his eye, and washed it out a number of times. The eye was stinging and "blurry." Plaintiff's wife called the train master, and plaintiff went to St. Mary's Hospital in East St. Louis.

Plaintiff returned to work at 10:30 p. m. on July 23, 1962. Dr. Szewczyk ordered some drops sent out to him, and Mr. Jolliff, the conductor, put them in plaintiff's eye. Plaintiff saw Dr. Szewczyk on July 24, 1962, and was seen and treated a number of times thereafter. He has not worked since July 23, 1962.

Dr. Szewczyk, called by plaintiff, stated that he first saw plaintiff on July 24, 1962, at which time plaintiff told him that while riding on a train two days earlier, the wind blew some dirt into his eye. Upon examination he found an acute infection and three corneal infiltrates in the left eye. Between that date and August 15, 1962, he saw plaintiff almost daily, and during the period he used antibiotics, heat, and various medications. A smear and culture revealed a hemolytic coccus aureus, an organism that can be carried in dust. On his last examination on June 10, 1963, plaintiff's eyesight in the left eye was 20/100ths

137

plus two. He further stated that plaintiff's condition was permanent, but not necessarily stationary, and his vision might improve to 20/50 or 20/60. He described the infection as a type of staph that could thrive in old bread crumbs or crusts.

Dr. V. P. Siegel, in his capacity as a doctor for the defendant, examined plaintiff on January 14, 1963, at which time his vision measured 20/20 in the right, and 20/100 in the left eye. He stated that industrial blindness is 20/70 vision, that he would "bad order" a man from switching duty at vision of 20/50, and as a clerk at 20/55. A man would be eligible to work as a clerk if his vision was correctible, with glasses, to 20/50.

On July 22, 1962, plaintiff was 40 years of age, a high school graduate and had eleven years of seniority as a switchman. In 1961, he earned $5,130 and between January 1 and July 22, 1962, had earned $3,390.

Defendant assigns as error the court's refusal to admit certain testimony of Cecil Barnett. Mr. Barnett testified that he had worked at defendant's Rose Lake Yard for forty years, and was presently employed there as a switching conductor. On plaintiff's objection, the court refused to permit him to testify that during his years of employment, when the weather was hot, the doors of a caboose were kept open, regardless of the condition of the windows. The court sustained plaintiff's objection to defendant's offer of proof wherein it offered to prove by the witness, Barnett, that a brakeman or conductor, riding in a caboose such as the one here involved, would, in hot weather, always have both doors open, that in his forty years of employment by defendant he had never seen the doors of a caboose closed in such weather, that it was necessary, in hot weather, to have the doors open in order to have proper ventilation in a caboose, and that this was true whether the windows were open

or closed. In its brief, defendant states that it is its theory of defense that the defective doors did not, in whole or in part, cause plaintiff's injury, because the doors would have been open for ventilation purposes regardless of their condition, that there was, therefore, no causal connection between the defective doors and plaintiff's injury.

■ Plaintiff's complaint charged that one of the doors on the caboose was defective by reason of a broken or lost hinge, so that it became necessary for plaintiff to stabilize the door in an open position by means of a wedge and while the caboose was in motion, plaintiff was struck in the eye by foreign matter. It also charged as negligence, defendant's failure to provide plaintiff a safe place to work by reason of its permitting the caboose to be littered, and in a state of disrepair, and its failure to provide brooms and other cleaning devices with which to remove the dirt and debris which had accumulated. In the state of the pleadings and evidence, the jury could have found that the accumulation of litter and debris was sufficient negligence on defendant's part to satisfy the requirement of liability under the Federal Employers' Liability Act, without regard to what part, if any, the condition of the door may have played in the occurrence. Gallick v. Baltimore & O. R. Co., 372 US 108, 83 S Ct 659, 9 L Ed2d 618.

■ ■ Although not phrased in that manner, defendant's rejected evidence was in the nature of proof of custom and usage. Defendant sought to offer the evidence for the purpose of showing that the custom of keeping the doors open was necessary for the proper ventilation of the caboose. Custom and usage cannot alter or change the standard of conduct required by law. Rylander v. Chicago Short Line Ry. Co., 19 Ill App2d 29, 153 NE2d 225, 17 Ill2d 618, 161 NE2d 812. Under the circumstances, the exclusion of the testi-

139

mony, and the rejection of the offer of proof, were not error.

Defendant complains of numerous instances of misconduct on the part of plaintiff's counsel, and contends that the effect thereof was to deprive defendant of a fair trial, resulting in a verdict so excessive that it must, of necessity, have been based upon the passion and prejudice of the jury, rather than the evidence. The record bears out defendant's contention that plaintiff's attorney made unwarranted comments, made repeated references to correspondence not in evidence, and asked several questions on cross examination which, with accuracy, can be characterized as inflammatory. Whether the cumulative effect of counsel's misconduct was so prejudicial to defendant as to require reversal depends, in part, upon whether the verdict is so grossly excessive as to support defendant's claim of passion and prejudice.

This court cannot say that the verdict is so palpably excessive as to indicate passion or prejudice on the part of the jury. According to the testimony of Dr. Siegel, plaintiff, with vision of 20/100, was not employable either as a trainman, or a clerk. The testimony offered by defendant as to the offer of a clerk's job, does not conclusively support defendant's contention that plaintiff's acceptance of its job offer would result in no future loss of earnings. In the state of this record, the jury was justified in concluding that plaintiff might not, in the future, derive much income from employment in the railroad industry.

The amount of damages to be assessed is peculiarly one of fact for the jury, and if the jury is properly instructed on the measure of damage, an appellate court should not substitute its judgment as to the proper amount to be awarded in a given case, for that of the jury. Smith v. Illinois Cent. R. Co., 343 Ill App 593, 99 NE2d 717; Hulke v. International Mfg.

Co., 14 Ill App2d 5, 142 NE2d 717; Ford v. Friel, 330 Ill App 136, 70 NE2d 626.

██ Defendant concedes that in many of the instances of which it now complains, no objection was made, or if objection was made and sustained, defendant did not move for a mistrial. It cites authorities which hold that if improper conduct prevents the parties from receiving a fair trial, such conduct may be considered on appeal even though no objection was made in the trial court, or if an objection was made and sustained, no further action was requested. This court is aware of the fact that in the trial of cases, an attorney, in the ardent and dedicated advocacy of his client's cause, may transgress the rules of propriety. The effect of such transgressions, whether intended or inadvertent, and the degree, if any, to which they may be condoned, is dependent upon a number of circumstances, and the inquiry on review is directed to whether they so affected the proceedings as to result in a tainted verdict. Whether opposing counsel to some extent provoked the indecorum, and the context in which the comment was made or the question asked, are factors which must be considered. The reviewing court must further consider whether an objection timely made, or a request that the court instruct the jury to disregard the statement, might have diminished or obviated the effect of the improvident remark.

██ Having determined that the conduct of plaintiff's counsel, however improper, did not result in a verdict so excessive as to require reversal for that reason, and finding no error in the court's rulings on defendant's objections, and in the absence of motions for mistrial subsequent to the misconduct complained of, we should not reverse on the basis of misconduct to which no objection was made, or upon which the court granted defendant all the relief it requested, unless we find such misconduct so op-

141

probrious as to have caused a deterioration of the judicial process. City of Chicago v. Pridmore, 12 Ill2d 447, 147 NE2d 54. We are sympathetic to defense counsel's argument that to have objected, requested that the jury be instructed to disregard, or moved for mistrial, would have further accentuated and magnified the harm already done, but we cannot disregard the long established rule that error will ordinarily not be considered on appeal unless proper objection is made and a ruling obtained thereon. Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249.

The affirmance of this judgment is not to be construed as approval of plaintiff's counsel's conduct, but we are confronted with the long established rule, that on the issue of whether or not a new trial should be granted, a trial court is vested with great discretion, and its decision should not be disturbed unless it satisfactorily appears from the record that such discretion has been abused. All of the misconduct which defendant assigns as error, was set forth in detail, in defendant's post trial motion, and was considered by the trial court. The Supreme Court in West Chicago St. R. Co. v. Annis, 165 Ill 475, at page 478, 46 NE 264, said "No more delicate question for decision can arise than the propriety of the conduct of counsel in the trial of cases, and it is gratifying to know that the sense of professional propriety is generally such that courts seldom need interfere. When, however, the necessity arises, trial courts should not hesitate to use their authority to restrain all efforts of attorneys to obtain verdicts by using unfair means, and making remarks outside of the evidence calculated only to arouse the prejudice and passions of the jury; and whenever such restraining influences do not effect the purpose, the fruits of such unprofessional conduct ought to be taken away by granting a new trial. It is, however, as held in the Cotton case, supra, a matter

142

resting in the sound discretion of the trial judge to say when, under all the circumstances of the case, and in view of the counter remarks which may be made and the temper and character of the jury, whether a new trial should be granted or not, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard courts of review cannot interfere. Applying this rule to the facts of this case we cannot say that the trial court committed error in refusing to grant a new trial because of the misconduct of plaintiff's counsel . . . ."

The judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

MORAN, J., concurs.

EBERSPACHER, P. J., dissenting:
I would remand the case for a new trial.

I consider the misconduct of plaintiff's counsel so opprobrious as to have caused a deterioration of the Judicial Process, to the extent that a fair trial was denied the defendant. Defendant has cited six instances of plaintiff's deliberate attempts to inflame and prejudice the jury by irrelevant and immaterial cross examination. It cites an additional thirteen instances of inflammatory remarks and attempts to supply evidence in plaintiff's closing argument. In addition numerous instances are cited of plaintiff's counsel answering questions which were propounded to witnesses and volunteering evidence which was not in the record.

In many instances there was no opportunity to object until after the prejudicial comment had been made and the damage done. This was an eye injury case, however plaintiff's counsel's first question on cross

143

examination to the defendant's witness, Metil, was: "What do you call a man with a leg off?" Notwithstanding defendant's objection which was sustained, plaintiff's counsel continued this line of inquiry by asking whether a man with a leg off would maintain his seniority and whether as a trainman, he would work with one leg off. He then asked the following double question, "How many legs have been cut off by the Pennsylvania Railroad? How many men have lost limbs who are not working?" Although the defendant's objection was again sustained, the question was so inflammatory and prejudicial as to cause irreparable harm. The obvious purpose of these questions, and of others cited, along with statements volunteered by plaintiff's counsel, was not to elicit information or present material facts to the jury, but to inflame the jury against the defendant. Continued objections to such serious and numerous indiscretions would only serve to magnify the harm, particularly in view of the trial court's failure to severely admonish plaintiff's counsel, and the trial court's routine "objection sustained" to highly prejudicial, and inflammatory remarks and questions.

A duty devolves upon a trial court to inject itself into the proceedings sufficiently to see that the litigants receive a fair trial; and it is always the duty of a trial court to control the proceedings to the extent necessary to insure this result, and in discharging this duty it is not always enough that the court sustain objections, but in a proper case should act promptly to stop misconduct. Bishop v. Chicago Junction Ry. Co., 289 Ill 63, 124 NE 312; Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249.

The prejudicial effect was not that the jury received improper evidence upon which to base their verdict, but that they were continually subjected to inflammatory remarks and arguments which preju-

144

diced their minds against the defendant, as was obviously intended. If counsel's wrongful conduct, even though not objected to in the trial court, is such as to interfere with a fair trial and Judicial Process, it may be considered for the first time on appeal. Belfield v. Coop, supra; Muscarella v. Peterson, 20 Ill2d 548, 170 NE2d 564; City of Quincy v. V. E. Best Plumbing & Heating Supply Co., 17 Ill2d 570, 162 NE2d 373; Illinois Law and Practice, Vol 2; Appeal and Error, Sec 263, 1065 Cum Annual Pocket Part.

While the trial court is vested with great discretion, in determining whether or not a new trial should be granted, and its decision should not be disturbed unless it satisfactorily appears from the record that such discretion has been abused, where the trial court has failed to use its authority to restrain the efforts of an attorney to obtain a verdict by using unfair means, and making remarks outside of the evidence calculated only to arouse the prejudice and passions of the jury, it would appear that the reviewing court should consider the trial court's failure to promptly stop repeated misconduct and persistent over indulgence in unfair tactics as an abuse of judicial discretion. To say that since the result is one which a jury might have reasonably reached had there been a fair trial, contributes nothing to the preservation of the requirements of orderly procedure, professional propriety, or the prevention of the deterioration of the judicial process.

I would agree in this case that the jury could have found that the accumulation of litter and debris was sufficient negligence on defendant's part to satisfy the requirement of liability under the Federal Employers' Liability Act, without regard to what part, if any, the condition of the door may have played in the occurrence. The record does not show that they so found. But the fact that they might have so found,

without the proof of custom and usage does not deny defendant the right to present such evidence. Had the jury heard the offered evidence, they could likewise have found that an article foreign to defendant's railway operation blew through the customarily open door into plaintiff's eye. Causation was an essential element of plaintiff's cause of action and defendant's proffered evidence tending to show that the doors would have been open regardless of their defective condition, was relevant to the issue of causation, particularly when it was only by inference that the jury could find that the accumulation of litter was the probable cause. Plaintiff had pleaded the defective door and that because the door was open the accident occurred. Defendant had denied this allegation. While custom regarding the open door was not material to the issue of negligence in allowing litter to accumulate, and failure to furnish a safe place to work, it was competent evidence in defense of the allegations concerning the defective door.

"The custom of a party, or his employees or the course of conducting his business may become relevant and material in an action involving some claim of liability arising out of such business." 31 A Corpus Juris Secundum, section 180, page 457.

In addition to the custom or usage, the offer of proof included the reason for the custom—"that it is necessary to have the doors opened in order to have proper ventilation in the caboose in hot weather" by the witness Barnett, who testified that he was a switching conductor in the Rose Lake Yard since 1924. Neither his qualification as an opinion witness nor his knowledge of the practice was questioned. I fail to find anything in the record that discloses that the offer was made for the purpose of showing that the custom of keeping the doors open in hot weather, was necessary for the proper ventilation of the caboose;

146

furthermore plaintiff's objection to the offered proof of custom was that it suggested that the employees "were content to work with less than what the law prescribed—to expose themselves to conditions that they are not, under the law obliged to assume" and made no mention of plaintiff's including, in the offer of proof of the custom, the reason for the custom. The court denied the offer "for the reasons Mr. Mc-Glynn has stated." This could reasonably lead the jury to believe that this was a pronouncement by the court that the plaintiff employee was working "with less than what the law prescribed."

The defendant was not contending that the evidence it sought to offer was a defense as a matter of law, but only a defense as a matter of fact to one charge of negligence that plaintiff had pleaded and defendant had denied. The question in this case is not whether there was any theory that the jury could adopt to support the verdict, as in the Gallick case cited in the opinion, but whether a ruling on evidence was correct.

Here the offered proof of custom and usage was relevant and material, one currently observed in the business and known or presumably known by plaintiff, and conflicted with no rule or law or statute. See Callaghan's Illinois Evidence, Sec 5.64 and cases cited therein.