JERRY L. PRATER, Plaintiff-Appellee, *v.* LUHR BROTHERS, INC., *et al.,* Defendants-Appellants.—(EUGENE LUHR & COMPANY, Third-Party Plaintiff-Appellee, *v.* ROBERT W. BRITZ PAINTING COMPANY, Third-Party Defendant-Appellant.)

Fifth District   No. 74-360

Opinion filed July 18, 1977.

G. MORAN, J., specially concurring.

John W. Leskera, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellant Eugene Luhr & Company.

Howard & French, of Chicago (Richard G. French and Stuart N. Litwin, of counsel), for appellant Robert W. Britz Painting Company.

Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis (Rex Carr, of counsel), for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff, Jerry L. Prater, hereinafter called the plaintiff, brought this action in the circuit court of St. Clair County to recover damages for bodily injuries he sustained on account of an alleged violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*), by defendants, Eugene Luhr & Company, and Luhr Brothers, Inc. A third-party complaint for indemnity was filed by Eugene Luhr & Company against Robert W. Britz Painting Company, a subcontractor and plaintiff's employer, alleging an implied indemnity count and an express contract count.

The jury returned a verdict in the sum of $410,000 against only the defendant Eugene Luhr & Company, hereinafter called Luhr, and the trial court directed a verdict in favor of Luhr against the third-party defendant, Robert W. Britz Painting Company, on the implied indemnification claim. The directed verdict against third-party defendant Robert W. Britz Painting Company, hereinafter called Britz, on implied indemnity was entered prior to jury deliberations, and the jury was informed of that determination. The trial court also found in favor of the defendant Luhr and against Britz on the express contract claim for indemnity.

The *ad damnum* in the complaint at the time of trial was $300,000. After the verdict of $410,000 was rendered, plaintiff was given leave to amend his complaint's *ad damnum* clause by interlineation to $562,000 and did so.

The plaintiff's feet were injured when he fell approximately 25 feet while painting a highway bridge's underside. In order to paint the

underside of the bridge, plaintiff and his co-employees of Britz had strung cables parallel with the girders that support the deck of the bridge. Then aluminum boards, called "pics" about 30 to 32 feet long and about 24 to 28 inches wide were placed on the cables to provide a place for painters to stand. These movable aluminum pics were not equipped with toe holds or hand rails nor were safety nets placed beneath them. Although safety belts were available they were not used at the job site.

At the time of his fall, plaintiff had just stepped off of a pic and onto a beam to reach a missed spot. He fell from the beam and back onto the pic and then to the ground landing feet first.

Plaintiff's injuries to his feet required surgery, and the use of casts for two months followed by the use of crutches for an additional three to four months after the accident. He is now able to walk normally. He has, however, lost some motion in his feet, and has persistent swelling and pain when he is on his feet for long periods of time. There is a possibility in the future of arthritis.

Both Luhr and Britz bring this appeal. On appeal, Luhr contends that the amount of the jury's verdict was excessive; that it was denied a fair trial due to the misconduct at trial of both plaintiff's counsel and that of Britz; and that certain evidence was improperly admitted. Britz contends that certain errors were committed at trial and that Luhr was not entitled to indemnity from it.

In regard to Luhr's contentions the decisive issue before this court is whether the conduct of the trial as a whole was so prejudicial to Luhr that the judgment should be reversed, and a new trial be had upon the issues. In *Department of Public Works & Buildings v. Mitchell* (5th Dist. 1974), 19 Ill. App. 3d 1083, 1085, 312 N.E.2d 691, an eminent domain case, this court stated that those cases which were reversed for denial of a fair trial to defendants involved the following types of behavior:

> " * * * numerous prejudicial remarks of counsel during the trial, many instances of prejudicial remarks in the closing argument, the general misconduct of the counsel which prevented the litigant from receiving a fair trial, and attempts to introduce improper evidence."

In the case before us, there is exhibited numerous examples of just this kind of behavior. The briefs of all parties, more than adequately supported by the record indicate an acrimonious trial. At one point early in the trial, after one of the numerous exchanges by counsel, the trial court warned: "There have been comments by both sides throughout the trial, and remarks, and I mean it should stop." The record indicates that such conduct did not stop and that much later in the trial the court stated, "Gentlemen, no more, no more."

Counsel for plaintiff on several occasions asked which had no proper

bearing on the present lawsuit, and further which appear to have been designed to raise an improper inference in the minds of the jury. An example of such is the following:

"Now have there been occasions in the past when other men have fallen from this equipment and been killed or badly injured?"

■■ An objection was promptly made and sustained. However, the sustained objection may not relieve the prejudicial aspects of such a question particularly when viewed in its cumulative effect.

Plaintiff's counsel when questioning the superintendent for defendant Eugene Luhr & Company asked questions about the superintendent's legal interpretation of the contract between Luhr and Britz which was improper. The superintendent was also interrogated about his personal concern for the safety of the employees, counsel concluding that the absence of safety nets, which were used on other unrelated jobs, indicated that he was not concerned about the safety of the workmen on this job site.

Then there is also a continuing series of questions concerning whether the superintendent was concerned about the possibility of falling. Objections at the time were made and sustained on the ground that the questions were irrelevant and designed for emotional impact.

Plaintiff introduced photographs of other projects which were allowed into evidence for the purpose of illustration to show how the pic and cable assembly was constructed. The photographs contained exhibit marks from a prior lawsuit. Plaintiff's counsel questioned Britz on whether the equipment depicted in the photographs was in fact owned by Britz. Plaintiff's counsel thus left a clear inference in the minds of the jury that Britz had been involved in a prior lawsuit concerning the same equipment, whereupon counsel for Britz referred to plaintiff's counsel, in front of the jury, by the use of language which clearly had no place in the court room.

In citing examples of improper conduct on the part of plaintiff's counsel, we do not intend to single him out, except as we must do so because of his posture as appellee and the assignment of this conduct as error by the appellants. The conduct of appellants' counsel was equally improper and comments and remarks made of like impropriety could be cited. Clearly such conduct impaired an orderly trial process and denied a fair trial for all the parties.

■■ There were other significantly prejudicial items that cannot be overlooked. The plaintiff was permitted to use an expert witness, an engineer, in regard to the issue of whether the scaffold was safe. He was not listed as a potential witness by the plaintiff in response to Luhr's discovery procedure. The reason plaintiff gave was that the expert's name

had not been technically requested. Then the witness was allowed to testify that the scaffold was unstable, and unsafe. The case is similar to *Geisberger v. Quincy* (2d Dist. 1972), 3 Ill. App. 3d 437, 278 N.E.2d 404, wherein it was held error to allow an undisclosed witness to testify and distinguishing a case where it appeared there was no showing of bad faith or intentional concealment. In *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254, 259, 300 N.E.2d 855, 859, the court stated:

"Where a party offers testimony of a person not listed on an interrogatory, the trial court has power to exclude the witness in its discretion, but exclusion is not mandatory. The trial court has the duty to ascertain the type of witness and content of the evidence, good faith of the party calling the witness, and degree of surprise and prejudice to the other party, including prior knowledge of the witness by the other party."

In the case at bar, the trial court found, and we agree, that the plaintiff's failure to disclose the expert was in violation of the spirit of the rules of discovery. The expert testified that, in his opinion, the scaffold was unsafe:

" * * * because it is not a rigid structure. It's free to sway and to move, because of the design and because the worker is not constrained in any way if he should inadvertently or for any reason lose his balance, he would be free to fall and the law of gravity would take him down once he lost his balance."

The content of the expert's opinion testimony involved matters of common knowledge and understanding. As such the evidence could properly have been held inadmissible. (*Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771.) Since the issue before the jury, the safe or unsafe condition of the pics, was not a complicated one, the expert's testimony could only have been superfluous while adding the personal weight of the expert to the plaintiff's theory of the evidence. In addition, as the trial court noted, since the expert had not been disclosed until the time of trial, both Luhr and Britz were at a disadvantage in countering his testimony. For these reasons, we are of the opinion that the undisclosed witness should have been excluded from trial.

Also, there is the disclosure by the trial court prior to jury deliberations, of the fact that any judgment against Luhr would be paid by Britz, coupled with plaintiff's closing argument which discussed the third party liability. This is distinguishable from but analogous to an insurance company situation.

In *Kavanaugh v. Parrett* (1942), 379 Ill. 273, 40 Ill. N.E.2d 500, the court was asked to reverse a judgment against the defendant because on *voir dire* the jurors were asked whether they had a financial interest in the

insurance company which had insured the defendant. The court in that case reversed because the question which was permitted, was not made in good faith. The court stated:

> "Whether the defendant has someone to help him pay a judgment, if one is rendered against him, has nothing to do with the case on trial, and to bring it into the lawsuit is to import an influence having nothing to do with the merits of the case and designed only to aid the plaintiff at the expense of the defendant. It would be no more unfair to show that plaintiff is insured, either by contract with his attorney, or otherwise, against the payment of any costs or attorney's fees, in case he loses. Neither makes for a fair and just trial of the lawsuit and neither should be permitted." 379 Ill. 273, 277-278.)

In *Reed v. Johnson* (2d Dist. 1965), 55 Ill. App. 2d 67, 204 N.E.2d 136, an action similar to the case at issue, a steelworker fell from a scaffold and was injured and sued under the Scaffold Act. The plaintiff's attorney in his closing remarks had said:

> " * * * You folks can bring in anything from fifty to one hundred thousand dollars, which is the amount of the *ad damnum,* which is the right amount here, and we are not going to have any personal concern and the Johnson Bros. don't. There is nothing personal."

The court reversed the judgment in favor of the plaintiff because:

> "In stating that defendant has no personal concern about the amount of the verdict, counsel clearly and, we think, deliberately implied the existence of insurance.
>
> We feel that the court should have sustained the objection and failure to do so constituted prejudicial error." (55 Ill. App. 2d 67, 76.)

See also *Ferrer v. Vecchione* (1st Dist. 1968), 98 Ill. App. 2d 467, 240 N.E.2d 439, citing *Reed v. Johnson* (2d Dist. 1965), 55 Ill. App. 2d 67, 204 N.E.2d 136, with approval.

The principle, however, is still the same where the third person is another business rather than an insurance company. It seems clear that where it would be improper to suggest an insurance company was ultimately liable, it would be just as improper to state unequivocally that a third business would be liable for any judgment. The danger to be guarded against is that information which has nothing substantial to do with the merits of the case is being introduced which would have an extremely detrimental impact on the defendants.

■■ Of course, the jury had to be instructed as to the role of each defendant, and what could be, or could not be done with respect to each of them, but drawing out and highlighting the impact of the directed verdict, as plaintiff did on closing argument was improper, and did

"import an influence having nothing to do with the merits of the case."
*Kavanaugh v. Parret* (1942), 379 Ill. 273, 40 N.E.2d 500.

In *Geisberger v. Quincy* (2d Dist. 1972), 3 Ill. App. 3d 437, 442, 278 N.E.2d 404, the court said:

> "We need not rule upon or further dissect each verse of this litany, as the cumulative effect of error and improper conduct of counsel may amount to prejudicial error requiring reversal. (*Underwood v. Pennsylvania R.R. Co.*, 34 Ill. 2d 367, 215 N.E.2d 236, revg. 62 Ill. App. 2d 134, 210 N.E.2d 347.) So viewed, we think it is obvious plaintiff was prejudiced and entitled to a new trial, * * *."

As demonstrated by the size of the award, $110,000 in excess of the prayer before it was amended after verdict, we find that the general misconduct of the parties of which we have cited but a few examples, was such as to have caused substantial prejudice in the minds of the jury against the defendant thus depriving the defendant of a fair trial. We therefore reverse the judgment below and remand for a new trial.

We next consider the issues raised by Britz concerning Luhr's third-party complaint for indemnity. As we have mentioned Luhr sought indemnity from Britz both implied at law and under a contract. At the close of all the evidence, the trial court directed a verdict in favor of Luhr and against Britz on implied indemnity. By agreement of the parties, following the trial, the court considered the express contract claim for indemnity and it also found in favor of Luhr and against Britz. On appeal Britz contends that the existence of a contract providing for indemnity obviates any right to implied indemnity. Next it is argued that under the terms of the contract, Luhr may not recover since the jury found Luhr at fault and the contract does not expressly allow Luhr to recover for its own negligence. Alternatively, Britz argues that under the facts the court erred in directing a verdict on implied indemnity. Luhr argues that it is entitled to indemnification on both the common law and contractual theories of recovery.

We must first determine whether a party may recover simultaneously under express contract and common law theories of indemnity.

Although it is not uncommon in Illinois for a trial court to contemporaneously consider claims for indemnity based on both common law and contract (*Valerio v. R & R Construction Co.* (1974), 20 Ill. App. 3d 48, 312 N.E.2d 713), no case has been cited, nor have we found any, in which indemnification was permitted under both theories. The reason is apparent. Recovery under a contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses

shall be allocated. In *Booth-Kelly Lumber Co. v. Southern Pacific Co.* (9th Cir. 1950), 183 F.2d 902, 906-07, the court in considering the effect of a contract covering indemnity, stated:

"We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it is important to examine the rules of the common law in order more accurately to determine the meaning of the written contract. * * * But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation."

See also *Union Pacific R.R. Co. v. Bridal Veil Lumber Co.* (9th Cir. 1955), 219 F.2d 825; *Northern Pacific Ry. v. Herman* (9th Cir. 1973), 478 F.2d 1167.

■■ The trial court's finding that the contract between Luhr and Britz covers the subject of indemnification is not disputed on appeal. The admitted existence of such an agreement thus precludes inquiry into potential rights and liabilities under implied indemnity and a recovery by the indemnitee, if any, must stem from the contract. *On this basis,* the judgment of the lower court allowing a recovery by Luhr under principles of implied indemnity is reversed. In light of this holding we need not consider whether the trial court erred in directing a verdict on implied indemnity under the evidence of this case.

The 1969 contract provided that:

"The Subcontractor (Britz) agrees to hold harmless the Contractor (Luhr) of and from any damages, expenses, costs or charges resulting from or on account of any injury or other damages sustained by any party not a signatory to this Subcontract, which injuries or other damages result from the work or activities of the Subcontractor in pursuance with this Contract, whether or not said work be done prior to or subsequent to the acceptance of said work by the owner."

Britz contends that under this provision Luhr is barred from indemnification if Luhr is found to be at fault, regardless of the degree of fault.

■■■ In interpreting an agreement, the agreement must be given a fair and reasonable construction based upon a consideration of all of its language and provisions. (*Tater v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272.) As stated in *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*(1946), 395 Ill. 429, 432, 70 N.E.2d 604, 606:

"It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined

from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein."

It is undisputed that under *Tater* and *Westinghouse* the contract between the parties cannot be construed as permitting indemnity for Luhr for judgments based on Luhr's sole negligence. Nor do we find that the indemnity provision at issue is so restrictive as to bar Luhr from indemnification on a judgment based on any degree of fault by Luhr. Either the parties in coming to their agreement must have realized that in the ordinary course of events, no occasion would arise in which Luhr would seek indemnity unless Luhr had been guilty of some fault for which a judgment had been recovered from it, or the parties did not comprehend or contemplate the possiblity of the passive negligence of Luhr. To construe the contract as Britz would have us would free Britz from any liability to indemnify Luhr. The agreement provided that Britz would indemnify Luhr from "any" damages from any injury which "result from the work or activities of the Subcontractor." We are of the opinion that a fair and reasonable construction of the agreement leads to the conclusion that Britz intended to indemnify Luhr in those cases in which Britz was actively and primarily at fault and Luhr was only passively and secondarily at fault. (*Bella Kay Building Corp. v. City of Chicago* (1965), 58 Ill. App. 2d 230, 208 N.E.2d 60; see also *Wrobel v. Trapani* (1970), 129 Ill. App. 2d 306, 264 N.E.2d 240; *Sack v. Arcole Midwest Corp.* (1961), 33 Ill. App. 2d 344, 179 N.E.2d 441.) Under the Structural Work Act there can be degrees of fault among those who are accountable under the Act to an injured plaintiff. (*Rovekamp v. Central Const. Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756.) A determination of the comparative fault between indemnitor and indemnitee presents a question of fact for a jury. (*Jackson v. Illinois Central Gulf R.R. Co.* (1974), 18 Ill. App. 3d 680, 309 N.E.2d 680.) We therefore reverse that portion of the trial court's finding that Luhr can recover from Britz under the contract and remand for a new trial consistent with this opinion. On retrial the questions of indemnity will be *referred to the jury* under the principles of common law indemnity, since the contractual provision regarding indemnification lacks the required clear and unequivocal language to delineate the responsibilities of the parties in a manner in derogation of the common law right to indemnification.

The judgment of the circuit court of St. Clair County is reversed and the case is remanded for a new trial.

Reversed and remanded for a new trial.

KARNS, J., concurs.

694

Mr. JUSTICE GEORGE J. MORAN, specially concurring:
I concur in the result reached by the majority in this case, but I do not concur in all of the language.