TIMOTHY McGINN, a Minor, by Clarise McGinn, his Mother and Next Friend, Plaintiff, *v.* NORTHWESTERN STEEL AND WIRE CO., Defendant and Third-Party Plaintiff-Appellee.—(M & M ELECTRIC COMPANY, Third-Party Defendant-Appellant.)

First District (5th Division)    No. 77-1523

Opinion filed December 8, 1978.—Supplemental opinion filed on denial of rehearing February 9, 1979.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Karl M. Tippett, D. Kendall Griffith, and Stanley J. Davidson, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (John R. Caffrey, James T. Ferrini, and Gary Kostow, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The third-party plaintiff, Northwestern Steel and Wire Co. (Northwestern), filed a third-party action seeking contractual indemnity and common law indemnity from third-party defendant, M & M Electric Company (M & M). M & M appeals from the entry of summary judgment against it on the contractual indemnity count, maintaining that summary judgment was improper in that (1) the indemnification agreement does not indemnify Northwestern against its own negligence, and (2) the trial court did not consider M & M's affirmative defense that the indemnification provision is unenforceable because of the disparity of bargaining positions between M & M and Northwestern.

We reverse and remand. The pertinent facts are as follows.

Northwestern owned, operated and maintained a plant in Sterling, Illinois. On September 26, 1967, it issued a purchase order, accepted by M & M, requesting that M & M furnish "labor, supervision, tools and equipment necessary to do general electrical construction and installations" for one of Northwestern's electric furnaces. Timothy McGinn (McGinn), plaintiff in the principal action, was employed by M & M

in connection with performance pursuant to the purchase order. On May 29, 1969, while working on one of Northwestern's electrical substations, McGinn suffered an injury which left him permanently deformed and crippled.

McGinn brought a two-count complaint against Northwestern, alleging that his injuries were caused by an electrical shock which threw him from the substation to the ground some 30 feet below. McGinn claimed that Northwestern had violated the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60-69), and that Northwestern was negligent in that it failed to shut off the electrical current, maintained the work area in an unsafe and dangerous condition, and failed to warn McGinn of the danger in the area in which he was working.

Northwestern denied any violation of the Structural Work Act and further denied any negligence on its part. In addition, Northwestern filed a third-party action against M & M, alleging that McGinn had been injured in the course of M & M's performance under the purchase order, and seeking complete indemnification in the event that judgment was entered in favor of McGinn. Count I of the amended third-party complaint sought indemnification under an indemnification clause in the purchase order. Count II was based on common law indemnity, claiming that the area where McGinn was working at the time he was injured was under the exclusive control of M & M, and that any violation of the Structural Work Act was primarily caused by M & M.

In answer to Northwestern's amended third-party complaint, M & M generally denied the allegations and raised as an affirmative defense the claim that the indemnification clause in the purchase order was unenforceable due to the disparate bargaining positions of the parties and because M & M was not aware of the clause or its implication.

Northwestern filed a motion for summary judgment on the issue of liability under its contractual indemnity claim. M & M replied that the indemnification clause was not broad enough to cover injuries resulting from the negligent acts of Northwestern, and that the affirmative defense pleaded in answer to Northwestern's third-party complaint raised a factual issue.

The trial court entered partial summary judgment, finding M & M bound to indemnify Northwestern for "any and all liability, costs and expenses" which may be incurred by Northwestern by virtue of McGinn's lawsuit. The court left the issue of damages for further proceedings.

Subsequently, Northwestern moved for entry of judgment on the damage issue. The motion set forth that M & M had refused to accept tenders of further defense of McGinn's case against Northwestern, that M & M refused to contribute to any settlement which Northwestern could make with McGinn, and that M & M rejected the offer of a settlement

amount of $800,000. The motion further stated that, upon M & M's rejection of the settlement offer, Northwestern's insurance carrier paid McGinn $800,000. Northwestern's motion sought $800,000 as reimbursement for the settlement, plus $20,000 in costs and attorney's fees. M & M filed a reply to the motion, after which judgment was entered for Northwestern as requested in its motion. The judgment order further denied M & M's motion for rehearing of the summary judgment on liability.

OPINION

■■ The sole issue on appeal is whether the trial court properly entered summary judgment in Northwestern's favor, based on its claim of contractual indemnity.

M & M first contends that the indemnification clause in the purchase order is not broad enough to indemnify Northwestern against its own negligence. Paragraph 18 of the purchase order provides in relevant part:

"INDEMNIFICATION—If this purchase order requires the performance of work or services on Purchaser's [Northwestern's] property, then Seller [M & M] shall indemnify and save harmless Purchaser of and from (a) all claims which may be made against Purchaser by reason of any injury or damage suffered or sustained by any person, firm or corporation caused by or alleged to have been caused by an act or ommission [sic], negligent or otherwise, of Seller or of Seller's employees, workmen, servants or agents; (b) and and [sic] all injury or damage to Purchaser's property occupied or used by or in proximity to the site of the work caused by an act or omission, negligent or otherwise, of Seller or of Seller's employees, servants or agents; and (c) all claims which may be made against Purchaser by reason of any injury or damage, however caused, which may be suffered or sustained by employees, workmen, servants or agents of Seller."

The supreme court has had several opportunities to examine contractual indemnification provisions purporting to protect a party from its own negligence[1] and it has consistently held that such provisions be strictly construed against the indemnitee.

*Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, involved a claim arising from the death of a Westinghouse employee which resulted from the negligence of an employee of LaSalle. The contract involved contained a provision

---

[1] Although legislation has been enacted making it against the public policy to indemnify against one's own negligence (Ill. Rev. Stat. 1977, ch. 29, par. 61), the provision in the purchase order, if applicable, can still be enforced because the purchase order was issued prior to September 23, 1971, the effective date of the legislation.

which specifically indemnified Westinghouse only for its own negligence and the court refused to construe the contract to include the negligence of other parties. Reiterating the general rule that a contract will be construed as indemnifying one against his own negligence only if such a construction is necessitated by "clear and explicit language of the contract [citations], or such intention is expressed in unequivocal terms" (395 Ill. 429, 433, 70 N.E.2d 604, 607), the court found that Westinghouse was not protected from its own negligence. To find indemnity, the court concluded, would be to impose upon LaSalle the duty to indemnify against injuries entirely beyond its control. The court would not find such an obligation to exist in the absence of clear language in the contract including injuries arising from the negligence of LaSalle's own servants. 395 Ill. 429, 434, 70 N.E.2d 604, 607.

The *Westinghouse* holding was reaffirmed in *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 294 N.E.2d 272, in which a general contractor sought indemnity from a subcontractor based on a contract that provided for indemnification " '* * * from and against all expenses, claims, suits, or judgments * * * arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor's work. * * *' " (54 Ill. 2d 64, 66, 294 N.E.2d 272, 273.) In refusing to allow indemnification, the court noted that:

"* * * the contractual provisions involved are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions." 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273.

The issue was again considered by the supreme court in *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469, and once again the court denied indemnity. *Zadak* involved a purchase order containing an indemnity agreement which was to indemnify the buyer from injuries "arising out of any such work covered by, necessitated or performed" under the purchase order. (59 Ill. 2d 118, 119, 319 N.E.2d 469, 471.) As in *Tatar*, the court recognized the importance of "the particular language used and the factual setting of the case" (59 Ill. 2d 118, 121, 319 N.E.2d 469, 471), in making its decision. Concentrating on the "arising out of" language in the purchase order, the court analyzed the facts of the case and found that the injury claimed did not result directly from the work covered by the purchase order, although it occurred while that work was being done.

Applying the principles set forth in *Westinghouse, Tatar* and *Zadak* to the instant case, we conclude that Northwestern is not indemnified

against its own negligence under the provisions of the purchase order. While at first glance the language "however caused" in clause (c) of the indemnification provision appears to be broad enough to include Northwestern's negligence, a closer examination of the clause in its context leads to the opposite conclusion.

The entire indemnification provision, as Northwestern contends, provides for different levels of liability on the part of M & M. Clause (a) indemnifies Northwestern against any claims against it caused or alleged to have been caused by acts of M & M, "negligent or otherwise." Similarly, clause (b) indemnifies Northwestern from any damage to its property caused or alleged to have been caused by acts of M & M, "negligent or otherwise." Clause (c) indemnifies Northwestern against any claims against it for injury to M & M's employees "however caused." While reference to injury "however caused" may include injury that is caused by acts of negligence, there is no reference in clause (c) to any acts of Northwestern. As in *Westinghouse*, the entire provision clearly reveals that M & M has agreed to indemnify only for its own actions, in clauses (a) and (b). To expand M & M's obligations to include acts of Northwestern and other parties when such intention is not expressly indicated in the language of clause (c), would be to make M & M responsible for unforeseen acts entirely beyond its control. This is precisely the rationale followed by the court in *Westinghouse* in denying indemnity, and it leads us to the same conclusion.

Northwestern relies primarily on an analysis of the language "however caused" that takes the language out of context and maintains that Northwestern's acts are implicitly included in the provision. It thus ignores the requirement of *Westinghouse* that the language be "clear and explicit" or the intent to indemnify be expressed in "unequivocal terms." (395 Ill. 429, 433, 70 N.E.2d 604, 607.) Moreover, the principal cases cited by Northwestern were decided prior to the supreme court's reaffirmation of *Westinghouse* in *Tatar* and *Zadak* and the trend since *Tatar* and *Zadak* has become one of strict and narrow construction of indemnification provisions such as the one here. Our decision to deny indemnity is clearly in keeping with the rules pronounced in *Westinghouse, Tatar* and *Zadak*.

Because of our conclusion that Northwestern is not indemnified against its own negligence by virtue of the indemnification provision in the purchase order, we need not consider M & M's remaining contention that the clause is unenforceable due to a disparity of bargaining positions between the parties. However, our determination regarding Northwestern's contractual indemnity count has not in any way considered Northwestern's common law indemnity claim stated in count II of its complaint. Accordingly, the orders of July 25, 1975, and July 19, 1977, granting summary judgment to Northwestern in the amount of $800,000

plus $20,000 costs and fees, are reversed and the cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE MEJDA delivered the opinion of the court:
Northwestern has filed a petition for rehearing of this court's determination. The only point raised in the petition which merits further comment urges the reconsideration of Northwestern's contractual indemnity claim because it believes that we have inadvertently decided the common-law indemnity claim in count II of its third-party complaint. Northwestern's contention is totally unfounded.

We again emphasize that count II was never before this court, and we have neither considered nor do we intend to express any opinion as to the merits of that count.

Northwestern suggests that the rule in *Quilico v. Union Oil Co.* (3d Dist. 1978), 58 Ill. App. 3d 87, 374 N.E.2d 219, and *Prater v. Luhr Brothers, Inc.* (5th Dist. 1977), 51 Ill. App. 3d 685, 366 N.E.2d 399, cited here for the first time, might necessitate that the common-law indemnity claim also be resolved against Northwestern because of their apparent holding that the mere existence of a contract with indemnification provisions precludes the consideration of a common-law indemnity claim. We believe that Northwestern's reading of the two cases is incorrect. Both cases merely hold that *recovery* through indemnification may be had on only one theory and that the allowance of recovery according to contract obviates the need to consider the common-law claim.

■■ While recovery may be had on only one theory, there is nothing to prevent a party from seeking recovery under both theories. As acknowledged in *Prater*, this is commonly done. (See also *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112, and *Valerio v. R. & R. Construction Co.* (5th Dist. 1974), 20 Ill. App. 3d 48, 312 NE.2d 713.) Furthermore, such practice is consistent with the well-established rule that a party has the right to plead and introduce proof on all possible theories of recovery, even if they are inconsistent. Ill. Rev. Stat. 1977, ch. 110, par. 43; *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500; *Bozeman v. Sheriff* (1976), 42 Ill. App. 3d 228, 355 N.E.2d 624; *Downs v. Exchange National Bank* (1959), 24 Ill. App. 2d 24, 163 N.E.2d 858.

Our decision in the instant case is that Northwestern is not indemnified against acts of its own negligence under the provisions of the purchase order issued to M & M. Nothing in our decision should be construed to affect Northwestern's right to pursue a recovery under any other theory.

For the reasons stated, we adhere to our prior disposition of this case. The petition for rehearing is denied.

SULLIVAN, P. J., and WILSON, J., concur.