BELVIDERE NATIONAL BANK AND TRUST COMPANY et al., Plaintiffs-Appellants, v. WILLIAM G. LEISHER et al., Defendants-Appellees.

Second District No. 79-323

Opinion filed April 17, 1980.

Kell, Conerty & Poehlmann, of Woodstock, for appellants.

Don Mateer, of Mateer & Erickson, and O'Brien, Healy, Wade, Abate & McNamara, both of Rockford, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs filed suit against defendants on January 24, 1977, alleging negligence which proximately caused destruction of and damage to plaintiffs' real and personal property. Plaintiffs alleged the Leishers failed to exercise reasonable and proper care in the complete and exclusive control, supervision and management of their premises, including the heating system, and that this failure was the direct and proximate cause of a fire which commenced on their premises and spread to plaintiffs' premises. Plaintiffs also alleged the fire and their subsequent damages were the direct and proximate result of the failure of defendants Ronald Knox and William Collins, d/b/a Atlas Heating & Cooling, to exercise reasonable care in the installation of the Leishers' furnace.

Atlas filed a motion for summary judgment, including therewith excerpts from the June 3, 1976, discovery deposition of plaintiffs' expert in fire investigation, Commander Henry S. Morton, U.S.N. Retired, and making his deposition a part thereof as exhibit No. 1. The deposition was taken in connection with a suit filed previously by the owners of the premises to the north of the Leishers, whose building was likewise damaged by the fire. The plaintiffs Harding were not party to that suit, but both the Leishers and Atlas were parties defendant in that action.

Both defendants had filed motions for summary judgment in that previous action, and both motions had been denied.

Atlas' motion for summary judgment was granted in the instant case on February 19, 1979, and again on March 2, 1979, following rehearing. An order granting the Leishers' motion for summary judgment was entered February 23, and filed on February 26, 1979. This appeal followed to determine whether the court erred in granting both defendants' motions for summary judgment.

All three of the Hardings died during the pendency of the case; Belvidere National Bank and Trust Company, as special administrator, was substituted as plaintiff, and Commercial Union Assurance Companies was added as a real party in interest upon motion of Atlas pursuant to section 22(3) of the Civil Practice Act. Ill. Rev. Stat. 1977, ch. 110, par. 22(3).

Our review of the record disclosed the following facts: The Leishers owned the building located between and having one common wall each with the Harding building to the south and the Shawvan-Johnson building to the north. The Leisher building was heated by a gas-fired warm-air furnace which was installed suspended between the ceiling and a false ceiling on the first floor of the building. Atlas had installed the furnace approximately two to three years prior to the fire which occurred on January 24, 1972. The fire spread out of control to the Harding building and the Shawvan-Johnson building causing destruction and damage to real and personal property in both buildings. Plaintiffs claimed damages in the amount of $4699.74.

Plaintiffs cite Illinois cases which show the general purpose of summary judgment is to expedite the administration of justice by disposing of cases where the pleadings, depositions, affidavits and admissions on file fail to reveal there is a genuine issue of any material fact. Plaintiffs point out that negligence actions are not readily susceptible to resolution by summary judgment proceedings, and that such relief is generally granted only where the facts are uncontroverted and where the court, upon the proofs submitted at trial, would have to direct a verdict for the moving party. (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80.) Among other cases, plaintiffs cite *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, insofar as it prescribes the test the courts have determined should be employed in deciding a motion for summary judgment. Basically the test is that inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then a triable issue exists and summary judgment should not be granted. This test was adapted for use in instances where a discovery deposition was relied upon in support of the motion for

summary judgment in the case of *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 339:

"To warrant the granting of a motion for summary judgment based on discovery depositions, a fact or facts that would bar recovery as a matter of law must be admittedly so clear and unequivocal that such admissions are not open to dispute or different interpretations."

Plaintiffs contend the deposition was not so clear and unequivocal so as to allow the grant of summary judgment, and that on the basis of the deposition a genuine issue of material fact does exist as to each of the defendants, to-wit, whether the Leishers failed to exercise reasonable and proper care of the instrumentality in their complete and exclusive control and whether this was the proximate cause of the damages sustained in the Harding building; and whether Atlas acted with due care in installing a gas-fired warm-air heating furnace in a nonventilated combustible void and, if not, whether this was the proximate cause of the damages sustained in the Harding building. Plaintiffs additionally contend, citing *Fletcher v. Boxx* (1973), 10 Ill. App. 3d 928, that the trial court impermissibly weighed and appraised the evidence in considering the motion for summary judgment since summary judgment procedure is not meant to be used to try an issue of fact, but simply to determine if an issue of fact exists.

Alternatively, plaintiffs argue the deposition was improperly considered by the trial court since it was not signed, nor was there a waiver of signature, nor was the deposition taken in the instant cause but in a cause to which plaintiffs were not parties. Thus, since the document was not properly filed with the court, it should not have been given the force and effect of an affidavit in determining the motion. *Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429.

Atlas agrees with plaintiffs as to the appropriate use of summary judgment. However, Atlas contends the motion for summary judgment was properly granted since plaintiffs did not file any counter-affidavits to the motion and the plaintiffs' expert's deposition did not reveal any negligence on the part of the defendant Atlas. The deposition indicated the furnace was properly installed, was not in violation of any codes or regulations, and was not malfunctioning. Atlas argues that statements made by the expert in clarification and/or explanation of other statements he made in the deposition serve only to impeach him and should not be considered to be affirmative evidence. Atlas further argues that the case relied on by plaintiffs regarding the use of the unsigned deposition (*Bezin v. Ginsburg*), is unsupportive of plaintiffs' contention, since *Bezin* clearly indicates that the issue of improper use of the deposition must be raised at the trial level or the issue is precluded from being raised on appeal. It was

plaintiffs' duty to object to improper evidence, but plaintiffs raised no objection whatsoever to the use of the deposition at the trial level. Therefore, the plaintiffs must be deemed to have waived the objection.

The Leishers argue they were properly granted summary judgment on the basis of the expert's deposition wherein he expressed his opinion the fire was caused by the furnace itself which was properly operating and installed, and on the basis of the uncountered affidavit of their attorney. Their attorney's affidavit set forth the fact that he had had a conversation with Commander Morton during the previous litigation concerning the Shawvan-Johnson building and that Commander Morton's opinion then was that the Leishers were not responsible in any manner for the fire which occurred on their premises. The Leishers argue the expert stated there was no information available to homeowners or owners regarding precautions to prevent fires such as this, that there would be no odor until three to six hours before the fire began, and the furnace would not have been excessively hot to the touch before the fire.

The Leishers liken the case at bar to a medical malpractice case where an expert is needed to prove liability on the part of the defendant, and cite the case of *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, in support thereof. In that case, a grant of summary judgment was affirmed because plaintiff's expert was unable to establish the standard of care by which to measure the defendant's conduct since the expert had never treated the malady involved in the case, nor could he offer an opinion as to whether the defendant's conduct was below acceptable medical standards, both of which were essential elements in the establishment of plaintiff's *prima facie* case. Another argument the Leishers present is that the law firm that represents plaintiffs in the case at bar also represented the other plaintiffs in the prior litigation, and they voluntarily dismissed the Leishers from that case before it went to the jury because they were unable to present any evidence as to their liability. The Leishers argue it would be unjust to subject them to another trial only to be dismissed out at the close of all evidence.

The Leishers additionally contend the deposition was properly considered by the court in deciding the motion since plaintiffs made no objection at the trial level, and since signature may have been deemed to have been waived by virtue of the attorney's silence at the end of the deposition wherein he had earlier reserved waiving the reading, signing and filing of same. Also, if plaintiffs contend the court should not have considered the deposition, then all that remains to be considered is the Leishers' attorney's affidavit which plaintiffs did not controvert.

Plaintiffs respond by asserting that Commander Morton's deposition must be considered in its entirety and, as such, it can raise different inferences in the minds of different persons. Further, the deposition shows

that triable issues of material fact exist which require a reversal of the trial court's summary dismissal of the cause. Plaintiffs add to their alternate argument regarding the improper use of the deposition the case of *Cookson v. Richardson* (1873), 69 Ill. 137, for the proposition that a deposition taken in another and different cause is not competent evidence against one not a party to the suit in which it was taken to prove any fact other than the pendency of the proceeding in which it was used. Plaintiffs distinguish the cases cited by both defendants regarding the use of the deposition and the fact plaintiffs failed to object to the use thereof during the summary judgment proceedings. Plaintiffs dispute the attempted analogy to a medical malpractice case, since the special standard of care to which a physician is held is something that is outside the common knowledge of lay people whereas the facts and possible precautions involved in the case at bar are readily comprehensible to lay people.

In resolving this case, we find it helpful to paraphrase the summary judgment procedure set forth in section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(3)) thusly:

> "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is [no question of fact as to any material element of the cause of action] and that the moving party is entitled to a judgment as a matter of law."

When the record is viewed in this manner, it becomes evident to us that two triable questions of fact do exist, and that the trial court improperly granted summary judgment as to both defendants Atlas and Leisher. Both questions of fact go to the second element of negligence: breach of the duty of care owed to plaintiffs.

With regard to Atlas, plaintiffs' expert basically stated his belief that the furnace was installed properly and the fire was not caused by a malfunction. His rather explicit qualifications of this "proper" installation, and which Atlas would have us disregard, raise what we believe is a genuine question of fact which amounts to a triable issue. He states in pertinent part:

> "The installer should install this furnace within the installation instruction tolerances. And I believe this furnace was installed within those tolerances. The thing is, this furnace was installed in an attic void which was unventilated except for the circulating air coming in one and out the other through the duct work. And, therefore, there was excessive heat buildup in this void and sufficient heat to ignite the combustible material at the point of the maximum leakage in the furance."

Consider also:

"Q Why doesn't this happen with every furnace?

A Because the conditions are not exactly, precisely the same. It does happen with an awful lot of furnaces.

\* \* \*

Q In your opinion, if you know; if you don't have an opinion that is fine, but is there anything that somebody can do that has a furnace like this to prevent this happening?

A Yes.

Q What is that?

A Ventilate the area so you don't get a heat buildup around the furnace casing.

Q How do you ventilate the area?

A By removing some of the panels and putting in ventilation panels.

\* \* \*

Q And you say this precaution [using asbestos around furnace] is the result of your particular knowledge in this field?

A I would say this precaution is the result of the tremendous amount of ignition, combustion work I have done over the last twenty-six years.

Q Would you say in this regard it is a peculiar knowledge and expertise in this area and not many people would know enough to take that precaution?

A I wouldn't say that, because this type of installation has produced a tremendous amount of fire nationwide, and this is well know [sic] throughout Government circles, Government sources, where both boilers, heat exchangers and other equipment is used."

 █ Although these comments show that Atlas may have properly installed the furnace in compliance with the installation instructions (which the expert did not have), and although the expert knew of no governmental building or safety code which would have required the special precautions he would have taken in installing the furnace in that area, we believe the expert's comments raise the question whether Atlas acted reasonably and with due care for the plaintiffs' safety under the circumstances. We do not feel that it would be beyond the ken of even ordinary people to know that the installation of a furnace in a confined area, surrounded by combustible materials, might present a fire hazard requiring certain precautions. We do not believe that the fact the installation instructions either did or did not prescribe such precautions would relieve Atlas of its duty to exercise such reasonable care as everyday ordinary common sense would dictate under those circumstances. Whether the duty of care owed to plaintiffs required Atlas to go

beyond the formal instructions and codes is a question of fact which should have been submitted to the trier of fact for determination. Although violation of statutes, ordinances or codes is conclusive to show defendant's breach of duty (leaving only the question of proximate cause), compliance with codes and safety regulations is not conclusive evidence on the question of negligence. *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064.

In considering whether a question of fact was raised by the pleadings, depositions, and affidavits as to defendants Leishers' duty of care, we noted particularly the following comment by plaintiffs' expert:

"Q Wouldn't it have been important in reaching your opinion to find out if there had been an odor or burning smell three or four days prior to the fire? Wouldn't that have been of significance to you?

A Yes, it was.

Q It was?

A Yes.

Q You said, yes, it would be important to find out if there was an odor?

A Yes. There was an odor.

Q How do you know that if you didn't talk to the people?

A I was told this by the Fire Department.

Q And who in the Fire Department told you?

A I think it was Captain Beal.

Q What did he tell you?

A He told me that the Police Department and the Fire Chief had made an investigation and they they [sic] had discussed this with the tenants and that there had been an odor in the building prior to the fire, two or three days prior to the fire."

■■ Other comments which were not entirely consistent were made by the expert and were pointed out in the Leishers' brief regarding whether there would be any noticeable odor prior to a fire and, if so, how soon before the fire began. Also, whether the exterior temperature of the furnace itself would provide a clue as to the imminence of fire. The Leishers construe these and other comments of the expert concerning the fact that the furnace appeared to have been properly maintained— although he stated he had no opinion as to whether the furnace had been properly maintained in fact—and that he did not know if there was any information available to owners about fire precautions to be taken in connection with this furnace—as affirmative evidence that they are not liable for plaintiffs' damage. However, count II of the plaintiffs' complaint alleges in part that the Leishers:

"8. * * *

D. Negligently and carelessly failed to exercise reasonable care in discovering and extinguishing a smoldering fire after being warned of smoke penetrating the floor of Defendants' premises."

This allegation, along with the expert's comments that "the Police Department and the Fire Chief had made an investigation," and that "they had discussed this with the tenants," and "that there had been an odor in the building prior to the fire, two or three days prior to the fire," suggests to us that a question of fact exists as to whether the Leishers had been forewarned of the possibility of fire either because smoke or a burning odor was evident on the premises for some time prior to the fire. If so, the question follows whether they acted reasonably and with due care for plaintiffs' safety given that knowledge. Our discussion above relating to a common-sense appreciation of the danger of a furnace in a confined area applies with equal effect to these defendants.

Consistent with summary judgment guidelines set forth in the *Lumbermens, Ruby,* and *Reith* cases, cited above, we conclude that the record in the case at bar presents a genuine issue of material fact as to both defendants Leisher and Atlas and that the circuit court improperly granted summary judgment. Plaintiffs should have been allowed their day in court. Accordingly, we reverse and remand for further proceedings. In view of our resolution of the issue on the basis of the first argument presented by plaintiffs, we do not discuss their alternate argument regarding the improper use of the discovery deposition.

The judgment of the circuit court of Boone County is reversed as to both defendants and remanded for further proceedings.

Reversed and remanded.

WOODWARD and VAN DEUSEN, JJ., concur.