PETROS CHRISTOU, Plaintiff-Appellee, v. ARLINGTON PARK-
WASHINGTON PARK RACE TRACKS CORP., Defendant-Appellant.

First District (3rd Division)    No. 80-2955

Opinion filed January 27, 1982.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Edward J. Zulkey, Norman J. Barry, Jr., Paul B. O'Flaherty, Jr., and Gerald L. Maatman, Jr., of counsel), for appellant.

William D. Maddux & Associates, of Chicago (William D. Maddux and Bruce M. Lane, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Petros Christou, brought this action to recover damages sustained when he went through a plate glass door on the premises of a race track owned and operated by defendant Arlington Park-Washington Park Race Tracks Corp. The trial court denied defendant's motions for a directed verdict at the close of plaintiff's case and at the conclusion of all the evidence. The jury returned a verdict for plaintiff in the amount of $86,700, and the trial court entered judgment on the verdict. Defendant appeals.

Plaintiff spent the afternoon of July 15, 1974, at the race track. After learning that he had won a bet he left the outdoor second floor observation area and started toward the clubhouse to collect his bet. The area around the clubhouse door was very crowded. As plaintiff attempted to open the door he was pushed into it and his left arm and right knee contacted and broke through the glass door.

Plaintiff's theory of liability is that defendant was negligent in failing to equip the door in question with safety glass rather than plate glass. Plaintiff's expert witness, Terrance Willis, expressed the opinion that safety glass was essential due to the traffic and hazardous location of the door. Defendant's expert witness, Eugene Holland, while stating that safety glass is safer than plate glass, opined that safety glass was not necessary here since defendant had installed both a safety bar and push-pull handles on the door.

We initially and briefly consider defendant's contention that the trial court erred in refusing to direct a verdict in its favor.

■■ A verdict should be directed only where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In the present case plaintiff presented sufficient evidence from which a jury could have concluded that defendant should have known the use of plate glass on the door created an unreasonable risk of harm. The trial court did not err in refusing to direct a verdict for defendant.

We next turn to defendant's contention that the damages awarded were excessive and could only have been the result of trial error. Specifically, defendant argues that it was error to allow testimony as to plaintiff's future earnings as a bartender and as a restaurant owner since such earnings were merely speculative and not reasonably certain to occur. Consequently defendant maintains that the trial court erred further in instructing the jury that it could award damages for lost earnings and earning capacity in the absence of competent evidence showing such losses.

Plaintiff was initially hospitalized for 10 days and wore a full leg cast for seven weeks. In December 1974 he underwent surgery to repair a damaged tendon in his right knee. After 10 days he was released and wore a cast for another seven to eight weeks. Plaintiff was still seeing the doctor in 1980. Plaintiff testified that he still had pain when required to be on his feet for extended periods of time and that the discomfort in his leg sometimes interferes with his sleep. He also testified that his injury limited his employment options.

Plaintiff was unemployed at the time of the injury but had previously

worked as a busboy. Plaintiff testified that he was in training for a job as a bartender which was to begin on July 18, 1974. He stated that, due to his injuries, he was unable to become a bartender and remained unemployed for about 18 months. According to plaintiff his salary as a bartender would have been $200 to $250 per week. He also testified that, based on his conversations with bartenders, he would have been making $400 to $450 per week at the time of the trial. In January 1976, plaintiff began employment in a lounge setting up glasses. He quit in August to accept employment at an electric company where he was not required to be on his feet. He worked at the electric company for four years at a salary ranging from $210 to $250 per week and then was laid off for reasons unrelated to his injuries. Plaintiff testified further that prior to the injury he had an ambition to own a restaurant some day. Over defense objection, a restaurant owner was permitted to testify for plaintiff that the average profitability of an average restaurant was approximately $500 to $700 per week.

We do not believe that a verdict of $86,700 in the present case was excessive as a matter of law. Nevertheless, we find that the introduction of certain evidence regarding damages was improper and prejudicial to defendant.

■■■ Impairment of earning capacity is a proper element of damages to be considered by the trier of fact. (*Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14.) Recovery, however, must be limited to such loss as is reasonably certain to occur. (*Pinkstaff v. Pennsylvania R.R. Co.* (1959), 23 Ill. App. 2d 507, 163 N.E.2d 728.) Testimony as to loss of earnings which is merely speculative, remote or uncertain is improper. (*Freehill v. De Witt County Service Co.* (1970), 125 Ill. App. 2d 306, 261 N.E.2d 52.) Permitting plaintiff's witness to testify about the average earnings of an average restaurant owner constituted serious error since it was too remote and speculative under the present facts and circumstances to be competent evidence of reduced earnings. Owning a restaurant was merely an ambition of plaintiff's which had never materialized, and the jury should not have been permitted to consider such income as an item of decreased earning capacity on the part of plaintiff. Similarly, although plaintiff's testimony that but for the accident he would have earned up to $250 a week as a bartender was proper, his testimony as to future earnings of up to $450 a week was inadmissible speculation. Since there was no competent evidence as to any decrease in earning capacity the court's instruction in that regard was also improper. In view of the fact that the case is close and since other trial errors occurred, we hold that the cumulative effect of those errors along with the introduction of improper evidence regarding damages amounts to prejudicial error requiring a new trial on all issues. (*Prater v. Luhr Brothers, Inc.* (1977), 51 Ill. App. 3d 685,

366 N.E.2d 399; *Anderson v. Universal Delta* (1967), 90 Ill. App. 2d 105, 234 N.E.2d 21.) We shall comment on those trial errors and on other issues which may arise at the new trial.

■■ The trial court refused to admit into evidence statutes and administrative regulations with which defendant was in compliance and refused to instruct the jury regarding that compliance. Compliance with statutes and safety regulations is not conclusive evidence on the question of negligence. (*Belvidere National Bank & Trust Co. v. Leisher* (1980), 83 Ill. App. 3d 179, 403 N.E.2d 1054; *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509.) It is, however, relevant to that issue. (*Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534; *Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311.) In the present case, since plaintiff was allowed to show that safety glass was safer than plate glass, defendant was entitled to show that the use of safety glass by existing structures was not required by law. While defendant did introduce this testimony through its expert witness, it should also have been permitted to introduce the statutes and receive appropriate jury instructions.

Plaintiff's counsel was permitted to cross-examine defendant's expert witness as to whether he was aware of the constitutional prohibition against the enactment of *ex post facto* laws and of its possible influence on the legislature's failure to make the required use of safety glass retroactive so as to include defendant's structure. Although the witness answered that he had no knowledge of the matter, plaintiff's counsel through his questions inferred to the jury that this constitutional provision had prohibited the legislature from making the statute retroactive. This in effect was a rebuttal of defendant's theory that the legislature had chosen not to make the statute retroactive because it did not believe there was a hazard.

■■ Statutory interpretation is not a matter to which an expert witness is competent to testify. (*People ex rel. Anderson v. City of Chicago* (1942), 316 Ill. App. 447, 45 N.E.2d 80.) This is true even where the witness is an attorney. (*Loeb v. Hammond* (7th Cir. 1969), 407 F.2d 779.) In the present case, the expert witness, an engineer, was indeed unable to answer the questions due to his unfamiliarity with the law. Nevertheless, plaintiff's counsel was able to convey to the jury by innuendo information which was both prejudicial to defendant and an incorrect statement of law. The permitted cross-examination was improper.

■■ The trial court correctly refused to allow defendant's expert witness to testify as to the state of the law at the time of trial. Defendant contends that in fact six years after the accident the legislature still exempted existing structures from the mandatory use of safety glass is a further indication that its use of plate glass was reasonable at the time of the accident. The state of the law at the time of trial may be relevant in a

personal injury case where it can be shown that the purpose of a statute enacted after the injury was at least partially to eliminate hazards existing at the time of the accident. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) In the present case there was no evidence that the legislature's failure six years after the accident to amend the safety glass statutes so as to include existing structures was due to the absence of accidents in those structures. Therefore, testimony regarding such statutes was irrelevant and the trial court did not err in refusing to admit it.

■■■ Defendant also attempted to present to the jury the provisions of a statute (Ill. Rev. Stat. 1969, ch. 51, par. 58) which provide that when a product incorporated into real property does not cause injury or damage within six years of installation reasonable care in the incorporation of the product is presumed. This statute, however, applies only to claims in relation to work done on real property or the manufacture of any product incorporated thereon. It has no application in the present case, where plaintiff neither claims that the glass was improperly installed nor that it was defectively manufactured but rather that defendant was negligent in having chosen that type of glass. The trial court properly rejected defendant's attempt to introduce the statute. Nor do we find any error in allowing plaintiff's expert witness to exhibit to the jury samples of broken plate glass and safety glass.

■■ We finally consider defendant's contention in which, relying on *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, it urges that the trial court erred in refusing to instruct the jury that any verdict for plaintiff would not be subject to income tax. Although the court in that case held that failure to give a similar instruction was reversible error, it specifically stated that the issue was a matter of Federal law. The holding in *Liepelt* does not apply to actions predicated on State statutes. (*Croce v. Bromley Corp.* (5th Cir. 1980), 623 F.2d 1084.) In such cases we must look to State law. In Illinois the income tax instruction is not required. *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230.

We need not consider defendant's other assignments of error since they are unlikely to recur at a new trial.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

WHITE, P. J., and RIZZI, J., concur.