BARBARA J. LONG, Plaintiff-Appellee, v. CLAUDE FRIESLAND, as Highway Commissioner of Hillsboro Township, *et al.*, Defendants-Appellants and Counterplaintiffs-Separate Appellees (Dayna Lee Watkins, Third-Party Plaintiff and Counterdefendant; Diana Holmes, Third-Party Defendant and Separate Appellant).

Fifth District No. 5—86—0734

Opinion filed December 20, 1988.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Kristine A. Karlin, Sarah Hansen Sotos, and Elizabeth A. Brown, of counsel), for appellants Claude Friesland and Hillsboro Township.

Reed, Armstrong, Gorman & Coffey, of Edwardsville (Teresa E. Kessler, of counsel), for appellant Diana Holmes.

Michael R. Glenn, of Nokomis, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

Following a jury trial in the circuit court of Montgomery County, plaintiff, Barbara Long, obtained a judgment in the amount of $215,000 against defendants Hillsboro Township, a municipal corporation, Claude Friesland, as highway commissioner of Hillsboro Township (hereinafter referred to collectively as the Hillsboro defendants), and Dayna Lee Watkins. Plaintiff sued defendants to recover for injuries she sustained when the vehicle she was driving collided with one driven by defendant Watkins on a road owned and maintained by the Hillsboro Township Road District. Plaintiff Long was found contributorily negligent in the amount of 5%. The jury prorated the relative degree of culpability of the defendants at 75% for defendant Watkins and 25% for the Hillsboro defendants. Judgment was entered upon the jury's verdict on May 21, 1986.

The automobile accident occurred on the morning of September 11, 1980, on a Hillsboro Township road commonly known as Huber Hill Road. Huber Hill Road is an oil and chip road which runs east and west. Plaintiff, Barbara Long, was proceeding eastbound on Huber Hill Road in a car owned by her sister, Diana Holmes, who was a passenger in the car at the time of the accident. Defendant, Dayna Lee Watkins, was travelling westbound on Huber Hill Road. As the Long vehicle approached a steep hill, the Watkins vehicle crested the hill partially in Long's lane of traffic. The two vehicles collided head-on and all three women sustained injuries. Plaintiff Long's injuries were by far the most severe.

Separate appeals are brought by the Hillsboro defendants and by Diana Holmes. Defendant Watkins is not appealing from the judgment entered against her. We will first address the issues raised by the Hillsboro defendants, and then will turn to the issues raised by Diana

Holmes. We will set forth only those facts which are necessary for our decision.

The Hillsboro defendants raise four arguments on appeal: (1) that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because (a) plaintiff failed to establish any standard of care or duty breached by defendants, and (b) defendants are immune from liability as public officials; (2) that the jury's verdict in favor of plaintiff is against the manifest weight of the evidence because plaintiff failed to prove any negligence or fault on the part of the Hillsboro defendants; (3) that, as a matter of law, the condition of the township road was not a proximate cause of the accident; and (4) that the trial court erred in instructing the jury that they could award plaintiff damages for lost future earnings and for future medical costs where there was no evidence to support such an award. We find no merit in any of defendants' arguments and affirm the judgment of the circuit court.

Plaintiff Long's complaint alleged, in relevant part, that the Hillsboro defendants had been negligent in maintaining Huber Hill Road in that they failed to maintain the road surface at a sufficient width to allow two oncoming vehicles to pass each other safely, and failed to maintain the area adjacent to the road surface with reasonable care at or near the scene of the accident. Specifically, plaintiff alleged that the Hillsboro defendants allowed trees, brush and weeds to grow up on either side of, and encroach upon, the roadway, further diminishing its width.

The following evidence was adduced by plaintiff at trial. Plaintiff, Barbara Long, testified that she had picked up her sister, Diana Holmes, and was driving Holmes' vehicle eastbound on Huber Hill Road, approaching the hill near the accident site. Trees, brush and weeds overhung the oiled portion of the road by approximately two feet on her side of the road. The brush created a "tunnel effect" and obscured the view of the top of the hill. Long was familiar with the hill she was approaching, knew it to be dangerous, and decreased her speed as she approached it. Long was driving far enough to the right side of the roadway that the brush was scratching the side of the car. At one point, a tree limb caught on the passenger's blouse and tore it. Plaintiff testified that she always drove Huber Hill Road with her right tires on the shoulder, which in some places was wide enough for two or three people to walk. Plaintiff did move slightly toward the center of the roadway just before the accident. Plaintiff saw the Watkins vehicle crest the top of the hill. Plaintiff momentarily accelerated and turned the wheels sharply to the right in an attempt to

avoid the collision. Her car partially entered the ditch at the side of the road and came to a complete stop. The Watkins vehicle then collided with plaintiff's vehicle.

Dayna Lee Watkins testified that she was driving westbound on Huber Hill Road and did not see the Long vehicle until she crested the top of the hill near the accident site. The Long vehicle was on its own side of the roadway but Watkins testified that her vehicle had crossed over the imaginary center line of the oiled surface of the road. Watkins described the hill as a "bad hill, real narrow, road." She stated that two cars could not pass each other at the crest of the hill if both stayed on the oiled surface. On the Watkins side of the road, brush and tree limbs would strike a vehicle if it stayed on its own side of the road. This is why Watkins was driving to the left of the center line at the time of the accident. She also testified that brush overhung the road on Long's side by two feet and that two cars could not pass each other at the point of the collision unless one of the cars had its tires in the ditch.

Diana Holmes was a passenger in the car being driven by Long. She testified that there was a great deal of brush growing up along the sides of the roads that overhung the oiled portion of the road one to two feet, depending on the location. Near the site of the accident the brush overhung the road by about two feet. Long slowed the vehicle as she approached the crest of the hill. She was driving so far over to the right that a tree limb tore Holmes' blouse. Holmes asked Long to move the vehicle toward the center of the road a little bit and Long moved about one foot toward the center of the road. Limbs were still striking the car after Long moved over.

Richard Hewitt is the fire chief for the City of Hillsboro and responded to the accident scene with the rescue unit. He testified that he estimated the width of the oiled portion of the roadway at the site of the accident to be approximately 10 to 12 feet. He did not actually measure the road, but stated that he is six feet tall and thought the road was approximately twice his length. He could not recall how wide the shoulder of the road or the ditch was, but testified that there was brush growing on the side of the ditch. He could not remember if any brush overhung the oiled portion of the road. He did testify that an ambulance passed his vehicle as it was parked on the roadway but did not remember if either vehicle was off the oiled portion of the roadway at the time.

Harold Whalen testified that he had lived on Huber Hill Road about one quarter mile west of the accident site for approximately 23 years. He described Huber Hill Road as a "mess." He testified that

on or about the date of the accident, on the Watkins side of the road at the crest of the hill and as Watkins approached the crest, there was brush growing 8 to 10 feet tall. Limbs up to an inch thick hung out over the road approximately three to four feet. The shoulder was dirt and was only one foot wide. At the point of the collision on the Watkins side of the road, brush also hung over the road. On the Long side of the road at the point of collision weeds grew five to six feet tall and some hung out over the road. Approximately 10 to 12 months prior to the accident, Whalen had measured the oiled portion of the road at the crest of the hill to be 13 feet. The roadway had not changed in appearance between the time of the measurement and the time of the accident. At the time of the measurement Whalen and another local resident complained to Claude Friesland and the Hillsboro Township Board of Supervisors about the condition of the road and the overhanging brush but received no satisfaction.

Ray Allen Price testified that he is familiar with Huber Hill Road and that he responded to the scene of the accident with the rescue unit. He opined that the width of the oiled portion of the road at the scene and time of the accident was approximately 10 to 12 feet. He described the hill as steep, narrow and overgrown with brush on both sides of the road. At the point of the collision on the Long side of the road, brush grew approximately six to eight feet tall. On the Watkins side of the road at the crest of the hill, brush overhung the edge of the road a foot or two. At the point of collision on the Watkins side of the road, brush was 10 to 12 feet tall and overhung the road at a height of four or five feet above the road surface. Price testified that when he drove the same route as Watkins had been driving that day, he also had to drive over the imaginary center line in order to avoid brush striking his vehicle.

Russell Hughes was a local resident who had lived in the area 15 years. He had travelled Huber Hill Road at the site of the accident once or twice a day for approximately two years prior to the date of the accident. On the date of the accident, the oiled portion of the road at the crest of the hill was 10 to 12 feet wide. On the Watkins side at the crest of the hill there was a great deal of brush, some of which overhung the oiled portion of the road by two feet. He testified that the brush on the Watkins side of the hill had not been cut for at least 15 years. On the Long side of the crest of the hill, weeds overhung the road and had not been cut all summer preceding the accident. Hughes testified that he did not know if two cars could pass each other at the collision site on the date of the accident, but that if two cars could pass each other at the crest of the hill, they would have to

do so very carefully.

Kelly Long was married to Barbara Long at the time of the accident, but was divorced from her at the time of trial. He described the hill near the accident site as steep and the road as very narrow. Brush and tree limbs extended out approximately two feet over the oiled portion of the road on the Watkins side of the crest of the hill and near the point of collision. The limbs were at such a height that they would touch the side of an automobile travelling down the road. Kelly Long testified that he spoke with defendant Claude Friesland on January 8, 1981, and Friesland told him that he did not know the width of Huber Hill Road prior to the date of the accident.

The following evidence was adduced by defendants at trial. Louis Huber was an insurance agent that had insured the vehicle Long was driving. He went to the scene of the accident on the date of the accident to take photographs of the scene. He identified certain photographs which were later admitted into evidence and shown to the jury. However, no photographs are included in the record on appeal and therefore we can neither consider them nor comment on them. (*In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 86, 462 N.E.2d 692, 695.) Huber testified that the width of the roadway was constant at the scene of the collision and for 200 yards either side. He did not observe anything on the date of the accident which would force a driver into the middle of the road. There was no brush which would make it difficult for two cars to pass each other in opposite directions at or about the scene of the accident. Huber admitted on cross-examination that his memory was not very good as to the amount of brush growing or the width of the road.

Jim Moore was a Montgomery County deputy sheriff who investigated the accident. He testified that the shoulders of the road near the accident site were made up of loose gravel and dirt and were a foot or two in width. At trial, he was unwilling to say that the shoulders were defective, but his police report, prepared at the time of the accident, indicated that the roadway defects included a low, soft shoulder with loose material. Moore measured the road on the day of the accident at what he believed to be the point of collision. The oiled portion of the road measured $16\frac{1}{2}$ feet, but the narrative portion of his police report stated that the road was approximately 15 feet in width. Moore testified that he wrote the narrative portion of the report before he measured the road. He stated that the width of Huber Hill Road was constant. Moore observed no brush or other obstruction overhanging the roadway on the date of the accident.

Lawrence Cranford investigated the accident and took photo-

graphs of what he believed to be the accident site on the date of the accident. He observed no obstructions of any kind, other than the hill itself, to traffic travelling in either direction. His vehicle was not struck by brush when he drove close to the edge of the road in either direction. He stated that the width of Huber Hill Road is constant and the shoulders are 1½ to 2 feet in width. He felt that there was sufficient width for two cars to pass each other. Cranford did admit that the road at the crest of the hill is very narrow and that it is a steep hill. A driver could not see oncoming cars over the hill.

Anthony Georgeff was the Montgomery County superintendent of highways in September 1980 and had worked with defendant Friesland for 18 years. He is also the grandfather of defendant Watkins. He inspected the accident site on the date of the accident. He measured the roadway at the accident site and found the oiled portion to be 16 feet 3 inches wide and the entire roadway, including shoulders, to be 22 feet wide. He did not measure the roadway at the crest of the hill. He testified that there was no brush overhanging the oiled portion of the road at a level which would interfere with sight or traffic. He described the road surface as good to very good. He testified that he was unaware of any other accidents that had occurred at this site. He saw no reason why two vehicles could not pass each other safely at the scene of the accident.

Defendant Claude Friesland testified that he measured the road at 16 feet in 1981 and that the road was oiled in 1979 or 1980 and it would have been measured at that time. He stated that brush did not overhang the oiled portion of the roadway on the date of the accident because all brush is cut twice a year. However, he stated that it might have been 1979 when the brush was last cut prior to the collision.

Roy Burris is the stepson of defendant Friesland and is also employed by the Hillsboro Township Road District. He testified that all township roads are mowed twice a year as standard procedure and more often if needed. Never has a township road not been mowed within a year period. Huber Hill Road was oiled and chipped at 16 feet wide sometime prior to the date of the accident, but it could have been as long ago as 1977 or 1978. He stated that he is not aware of any time that Huber Hill Road would have been less than 16 feet wide and he had never observed it to be 10 or 12 feet wide. He had never measured the road. He stated that both sides of the road have shoulders two to three feet in width.

The parties stipulated that both vehicles involved in the accident were approximately six feet wide.

The Hillsboro defendants' first argument on appeal is that the

trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict because (a) plaintiff failed to establish any standard of care or duty breached by defendants, and (b) defendants are immune from liability as public officials. They argue first that plaintiff failed to introduce any facts establishing a standard of care with which defendants were bound to comply and which they breached. They argue that where a defendant's duty is not properly defined the jury is unable to determine if that duty was breached. Defendants argue that a standard of care can be established by evidence of custom, statutes, ordinances, rules, regulations and codes, by judicially created standards of negligence *per se* and also through the testimony of expert witnesses who are qualified to define a given standard. Defendants point out that no such evidence was introduced in the instant case.

■ We are not persuaded by defendants' argument. While the questions of whether a duty has been breached and whether the breach proximately caused an injury are questions for the trier of fact, the existence of a duty must be determined by the court as a matter of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116, 119; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538, 540.) It has long been recognized that the duty owed by a local government is to maintain public highways within its boundaries in a reasonably safe condition. (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, 404 N.E.2d 213, 220; *Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 154, 306 N.E.2d 287, 289.) The trial court properly determined this to be the duty owed by defendants to plaintiff and so instructed the jury. Whether the Hillsboro defendants exercised ordinary care to maintain Huber Hill Road in a reasonably safe condition then became a question of fact for the jury. *Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller* (1979), 75 Ill. App. 3d 516, 522, 394 N.E.2d 559, 563.

Defendants argue, however, that the jury could not properly make such a determination without evidence of what constitutes a sufficient width for a roadway. It is true that oftentimes expert testimony, evidence of custom, statutes, regulations or some other evidence of an established standard of care is necessary for a jury to make such a determination. However, where the negligence is so apparent that a layman would have no difficulty in appraising it, such evidence of the standard of care is not required. (*Schmidt*, 75 Ill. App. 3d at 522, 394 N.E.2d at 563-64.) We think such is the case before us. A jury could properly determine whether defendants maintained an unsigned and hilly road which was not wide enough for two oncoming cars to pass

each other safely and/or which was overhung by brush forcing drivers to drive near the center of the road and obscuring their vision, and whether such conduct breached the defendants' duty to maintain township roads in a reasonably safe condition. Such a determination is within the common sense and knowledge of layperson jurors.

■■ ■ A party is entitled to a directed verdict or a judgment notwithstanding the verdict only when all of the evidence, viewed in the aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) We are unable to state that the evidence so overwhelmingly favors the Hillsboro defendants that they were entitled to a directed verdict or a judgment notwithstanding the verdict. Plaintiff introduced sufficient evidence as to the width of the roadway in question, the width of the vehicles involved in the accident and the existence of brush overhanging the roadway to raise a question of fact for the jury whether the Hillsboro defendants had breached their duty to plaintiff. The trial court properly denied defendants' motions for directed verdict and judgment notwithstanding the verdict.

■ Defendants also argue that the trial court should have granted their motions for directed verdict and for judgment notwithstanding the verdict because Claude Friesland is immune from liability as a public official and this immunity is extended to Hillsboro Township under the doctrine of *respondeat superior*. They argue that Claude Friesland is immune from liability as a public official because his actions in maintaining Huber Hill Road were discretionary rather than ministerial.

Defendant is correct that under the doctrine of common law public official immunity, liability will not be imposed upon public officials for the negligent performance of discretionary acts, whereas it will be imposed for the negligent performance of ministerial acts. (*Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809, 812, 495 N.E.2d 1356, 1358.) However, because we find that the act of maintaining existing public highways is ministerial in nature, we conclude that neither Claude Friesland nor his employer enjoyed immunity from suit for the negligent performance of that act. See *Campbell v. City of Marseilles* (1955), 5 Ill. App. 2d 45, 54, 124 N.E.2d 677, 681.

Ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without reference to the official's discretion as to the propriety of the act. (*Larson v. Darnell* (1983), 113 Ill. App. 3d

975, 977, 448 N.E.2d 249, 250.) The performance of a ministerial act does not require the exercise of judgment or discretion by the public official. *Larson*, 113 Ill. App. 3d at 977, 448 N.E.2d at 250.

At trial, Roy Burris, an employee of defendant Claude Friesland, testified that brush along township roads is mowed twice a year as normal, standard procedure, and more often if needed. He and other employees of the road district travel the township roads frequently. If they observe some maintenance that needs to be done, they do it. This includes cutting brush along the roads. He also testified that when roads were oiled, they were always oiled at a width of 16 feet. Claude Friesland, the highway commissioner, confirmed this testimony. Clearly, the cutting of brush alongside township roads is a ministerial act, as is maintaining the roadway at a width of 16 feet. These acts do not require the exercise of discretion or judgment by the public official, the highway commissioner. Instead, they are performed on a given state of facts in a prescribed manner by subordinates of the public official.

■ Because the act of maintaining the township roadways free of encroaching brush and at a certain width is purely ministerial, defendant Claude Friesland enjoys no immunity from suit for the negligent performance of that act. It follows, therefore, that Hillsboro Township does not enjoy immunity under the doctrine of *respondeat superior*. Hillsboro Township is amenable to suit for the alleged negligence of its employee, Claude Friesland, the highway commissioner. *Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 154, 306 N.E.2d 287, 290.

■ Defendants' next argument is that the trial court erred in denying defendants' motion for a new trial because the jury's verdict in favor of plaintiff is against the manifest weight of the evidence. Defendants argue that plaintiff failed to introduce any credible, competent evidence as to the width of Huber Hill Road at or near the accident site because she did not introduce any evidence of the actual measurement of Huber Hill Road, but introduced only guesses and estimates by laypersons who simply observed the road. Defendants argue that on the other hand, they introduced testimony of witnesses who had actually measured the road, which evidence clearly proves that Huber Hill Road was sufficiently wide for two cars to safely pass each other. Defendants' argument in this regard is that the testimony of their witnesses is entitled to more weight than the testimony of plaintiff's witnesses. Defendants argue that the jury erred in attributing fault to defendants because such a finding is against the manifest weight of the evidence.

A court of review is empowered to reverse a jury verdict only if it

is against the manifest weight of the evidence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) A verdict is said to be against the manifest weight of the evidence where it is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based upon the evidence. (*Ford*, 132 Ill. App. 3d at 412, 476 N.E.2d at 1236.) When considering whether a verdict is contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee, here plaintiff Long. *Ford*, 132 Ill. App. 3d at 412, 476 N.E.2d at 1236.

While the record reveals conflicting testimony as to the width of Huber Hill Road and the amount of brush overhanging the road, when the evidence is viewed in the light most favorable to plaintiff we cannot say that the jury's verdict is against the manifest weight of the evidence. Resolution of contradictory testimony is not the function of the reviewing court. Instead, it is the jury's function to resolve conflicts in the evidence *Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 932, 479 N.E.2d 1091, 1096.

■ We reject defendants' argument that the testimony of plaintiff's witnesses regarding the width of Huber Hill Road was entitled to no weight because it was only opinion testimony. Lay witnesses may offer opinion testimony as to the width of a roadway, and in *Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 390 N.E.2d 939, such testimony was found sufficient to establish the width of a right of way even though none of the witnesses had actually measured the right of way. Such evidence is admissible and stands as evidence which the jury may properly consider. It is up to the jury to evaluate the weight to be given such evidence and to assess the credibility of the witnesses. *Bass v. Washington Kinney Co.* (1983), 119 Ill. App. 3d 713, 728, 457 N.E.2d 85, 97.

Furthermore, defendant's argument ignores the fact that witnesses also testified that Huber Hill Road was overhung by brush by several feet. Thus, the jury may have determined that, even if Huber Hill Road was sufficiently wide in itself, the overhanging brush caused drivers to drive near the center of the road and effectively narrowed the road. In such a case, the actual measurement of the road would not have been the determinative factor.

We find that the jury's verdict is supported by the evidence and we find no indication that the jury's verdict is the result of passion or prejudice. The trial court did not err in denying defendants' motion for a new trial.

■ Defendants' next argument on appeal is that, as a matter of

law, the condition of Huber Hill Road was not a proximate cause of the accident. They argue that the sole proximate cause of the accident was the failure of defendant Watkins to drive her vehicle in her own lane of traffic. For the purpose of passing upon this question, we must determine whether there was a complete absence of facts and reasonable inferences therefrom to support the conclusion of the jury that the condition of Huber Hill Road was a proximate cause of the accident. (*Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, 152, 203 N.E.2d 621, 623.) In making this determination, we must view the facts and inferences in the light most favorable to plaintiff. *Kinsch*, 54 Ill. App. 2d at 152, 203 N.E.2d at 623.

Defendants argue that the condition of Huber Hill Road was not the cause of the accident, but only provided the occasion for the accident to happen. They argue that the cause of the accident was the act of defendant Watkins in driving in the plaintiff's lane of traffic. The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 316, 45 N.E.2d 665, 675.

There can be more than one negligent act which creates the proximate cause of an injury. (*Carr v. Shirland Township* (1978), 66 Ill. App. 3d 1033, 1037, 384 N.E.2d 449, 452.) Where the injury is caused by the concurrent negligence of two parties and the accident would not have occurred without the negligence of both, the negligence of each is the proximate cause of the injury. (*Carr*, 66 Ill. App. 3d at 1037, 384 N.E.2d at 452.) However, where the alleged negligent act did nothing more than furnish a condition making the injury possible through the subsequent independent negligent act of a third party, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. (*Carr*, 66 Ill. App. 3d at 1037, 384 N.E.2d at 452.) The test in determining whether both acts constitute concurrent proximate cause is whether the first wrongdoer might have reasonably anticipated or foreseen the intervening cause as a natural and probable result of the first wrongdoer's negligence. *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 317, 45 N.E.2d 665, 675.

■■ We find that the negligent act of the Hillsboro defendants in failing to properly maintain Huber Hill Road and the negligent act of defendant Watkins of driving outside her own lane of traffic are concurrent proximate causes of plaintiff's injuries. The evidence indicates that it was the negligence of the Hillsboro defendants which forced defendant Watkins to drive outside her own lane of traffic. A reasonable person would have foreseen that maintaining too narrow of a

road, and/or allowing the road to be obscured and further narrowed by overhanging brush, would force a driver to drive toward the center of the roadway, thereby causing a collision with an oncoming vehicle. There was sufficient evidence before the jury for it to conclude that the Hillsboro defendants' negligence was a proximate cause of plaintiff's injuries.

Defendants' final argument on appeal is that the trial court erred in submitting instructions allowing the jury to award plaintiff damages for lost future earnings and for future medical care as there was insufficient evidence as to the appropriate amounts to be awarded. Defendants first argue that because plaintiff had been voluntarily unemployed for several months prior to the accident, had not been seeking employment, and there was no evidence that she would have returned to work but for the accident, any award of future lost earnings was speculative. Plaintiff argues that she did, in fact, return to work after her accident and was working at the time of trial, although at reduced hours and reduced wages due to her injuries.

Impairment of earning capacity is a proper element of damages to be considered by the trier of fact. (*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 260, 432 N.E.2d 920, 923.) In order to recover lost earnings, all the law requires is that the plaintiff present evidence which establishes, with a fair degree of probability, a basis for the assessment of damages. (*Casey v. Baseden* (1985), 131 Ill. App. 3d 716, 722, 475 N.E.2d 1375, 1379, *aff'd* (1986), 111 Ill. 2d 340, 490 N.E.2d 4.) Recovery must be limited to such loss as is reasonably certain to occur. Testimony which is merely speculative, remote or uncertain is improper. *Christou*, 104 Ill. App. 3d at 260, 432 N.E.2d at 923.

Plaintiff testified at trial that she had been employed as a legal secretary from 1977 to the spring of 1980. In 1977, she earned $6.50 per hour, in 1978, $7.50 per hour, and in 1979, $8.50 per hour. Plaintiff did not work after the accident until 1984. At the time of trial, plaintiff was employed as a guest service representative at a Holiday Inn, where she worked four hours a day, two days a week. She earned $4.50 per hour. She testified that she remains a competent legal secretary, but is only able to work part time due to her injuries. She testified that it is impossible to find a part-time job as a legal secretary. She testified that she did have a full-time secretarial job for a time after the accident, but was forced to quit because of her injuries. Legal secretaries in the area where plaintiff resides earn from $8.50 to $12.50 per hour. Plaintiff testified that she has difficulty even working a four-hour shift due to her injuries. She must bring three

pairs of shoes to work and, by the time she finishes a four-hour shift, she must prop up her right foot and put ice on it to reduce the swelling and pain.

Plaintiff presented sufficient evidence from which the jury could determine the amount of her lost future earnings, and it was properly instructed on this element of damages. That plaintiff was voluntarily unemployed at the time of the accident is irrelevant. We think this case is similar to *Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 461 N.E.2d 551, wherein plaintiff sought damages for lost earning capacity, requesting the difference between his salary as a heavy machine operator (the type of work he performed before the accident) and his salary as a light machine operator (the type of work he was limited to performing as a result of the accident). Defendant argued that any such award would be highly speculative because plaintiff had been unemployed at the time of the accident. The appellate court held:

> "In our opinion, these periods of unemployment are irrelevant to the determination of lost earning capacity. Whether or not plaintiff was actually employed at either of those specific times, the fact remains that because of the accident, plaintiff is unable to perform the higher-paying type of work he actually did perform prior to [his accident]." (122 Ill. App. 3d at 429, 461 N.E.2d at 558.)

Prior to her accident, plaintiff worked as a legal secretary. Subsequent to, and as a result of, her accident, plaintiff was unable to work as a legal secretary. She testified as to the amount of her wages and the amount of hours she was able to work both before and after her accident. There was sufficient evidence to justify submitting to the jury an instruction allowing an award of damages for plaintiff's lost future earnings.

Defendants also argue that the trial court erred in submitting an instruction allowing the jury to award damages for future medical care and treatment as no evidence was introduced as to the cost of such care and treatment. Plaintiff's treating physician testified that plaintiff almost certainly would require future medical care in the form of an ankle replacement or ankle fusion surgery or, quite possibly, both. Neither type of surgery is always successful on the first attempt and multiple surgeries might be required. No evidence was introduced as to the possible cost of such medical care; however, there was evidence of the cost of plaintiff's medical care to the date of trial. That evidence indicated that plaintiff had incurred $26,471.82 in medical bills up to the date of trial. The jury awarded the sum of $40,000

for "damages for the reasonable expense of necessary medical care, treatment and services received and the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future." Thus, it appears the jury awarded $13,528.18 for future medical costs and expenses. Defendants argue that there was no basis in the evidence to support such an award and the trial court erred in instructing the jury that they could award such damages.

In *Young v. Gateway Transportation Co.* (1975), 26 Ill. App. 3d 864, 326 N.E.2d 222, defendants appealed a jury verdict against them, contending that the trial court erred in instructing the jury to consider future medical expenses in determining plaintiff's damages. The appellate court held that the jury had been properly instructed. The evidence indicated that plaintiff, who had suffered a hip dislocation as a result of defendants' negligence, had had implanted a metal prosthesis with a life expectancy of 10 to 15 years. Because plaintiff's life expectancy was 33 years, it was reasonable to believe that plaintiff would require replacement of the prosthesis in the future. The court held that the jury was properly instructed to consider plaintiff's future medical costs as an element of damages and that the amount of such costs could be measured by the expenses of the original surgery.

Similarly in this case, there was extensive evidence of plaintiff's injuries, the medical care she had received to the date of trial and the cost of such care. The evidence indicates that plaintiff would require future medical care. The jury had sufficient evidence before it to determine the estimated cost of such care and the trial court did not err in instructing it to consider future medical costs as an element of damages.

We now turn to the separate appeal brought by Diana Holmes. Diana Holmes was a plaintiff in the action brought by Barbara Long against the Hillsboro defendants. Plaintiffs' complaint was filed September 10, 1982. On September 27, 1983, the Hillsboro defendants filed an answer denying liability for plaintiffs' injuries and asserting the affirmative defense of contributory negligence as to plaintiff Long. On September 27, 1985, the Hillsboro defendants filed a counterclaim against Long for contribution to any award of damages made to Holmes. Just prior to the beginning of trial, defendants filed what they called a special defense of comparative negligence alleging that Holmes had been contributorily negligent and asking that any damages awarded her be accordingly reduced.

The case proceeded to trial on May 12, 1986. On Friday, May 16,

1986, after plaintiffs had rested their case, all parties were advised of the existence of a release which had been executed by Diana Holmes on October 1, 1981, releasing all parties from liability for any injuries she incurred in the accident. On Monday, May 19, 1986, the court entered judgment against Holmes and in favor of the Hillsboro defendants. Immediately following this ruling, the Hillsboro defendants requested leave to file a counterclaim against Holmes seeking contribution toward any damages awarded plaintiff Long. The motion was granted and defendants' counterclaim was filed May 19, 1986. The counterclaim alleges Holmes' negligence and seeks contribution from Holmes for her proportionate share of any judgment entered against defendants and in favor of Barbara Long.

On May 20, 1986, Diana Holmes filed a motion to dismiss the counterclaim or, in the alternative, for a continuance. The motion to dismiss was denied, and the trial court, on its own motion, severed the counterclaim from the main action and continued further proceedings on the counterclaim until such time as a verdict was rendered in the original action. Holmes' motion to reconsider this ruling was denied on October 15, 1986.

Holmes argues that the trial court abused its discretion in allowing the Hillsboro defendants to file a counterclaim on the sixth day of trial, after plaintiffs had rested their case and after judgment had been entered against Holmes and in favor of the Hillsboro defendants. Holmes argues that the counterclaim is not an amendment of the pleadings to conform to the proof which is allowed by section 2—616 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—616.) Holmes also argues that the counterclaim was not filed in accordance with the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 et seq.), because it was not filed in a "pending action" within the meaning of that act.

A counterclaim is to be filed contemporaneously with, and as part of, a party's answer. (Ill. Rev. Stat. 1987, ch. 110, par. 2—608(b).) Where a party seeks to file a counterclaim subsequent to the filing of the answer, it is within the discretion of the trial court to grant or deny leave to do so. (Benckendorf v. Burlington Northern R.R. (1983), 112 Ill. App. 3d 658, 661, 445 N.E.2d 837, 839.) While we are mindful of the deference we owe the decisions of the trial court, we find that in this case the trial court abused its discretion in granting leave to the Hillsboro defendants to file a counterclaim against Holmes at such a late date where defendants offer no reasonable explanation for their delay and where Holmes was prejudiced thereby.

The Hillsboro defendants were aware of the facts giving rise

to their counterclaim at least as early as May 3, 1983, when Holmes was deposed and admitted that she had asked her sister to drive nearer the center of the road. On May 12, 1986, the first day of trial, defendants filed a special defense of comparative negligence against Holmes alleging virtually identical facts as contained in the counterclaim. The explanation offered by defendants for their delay in filing the counterclaim is that discovery of the release signed by Holmes required them to change their theory of recovery against Holmes. Prior to discovery of the release, defendants had asserted only an affirmative defense against Holmes' claim. This affirmative defense was rendered moot by entry of the judgment against Holmes and in favor of defendants. We fail to see, however, why this would affect defendants' decision whether to file a counterclaim for contribution against Holmes. Defendants knew of the facts giving rise to their counterclaim long before trial and for whatever reason failed to file a claim for contribution against Holmes. We fail to see how the discovery of the release would suddenly prompt defendants to file the counterclaim and excuse their failure to do so earlier.

We further find that Holmes was prejudiced by the late filing of the counterclaim. She was denied the opportunity to participate as a defendant in discovery. She was denied representation as a counterdefendant throughout the presentation of plaintiff Long's case. She was unable to attempt to minimize the extent of plaintiff Long's injuries or reduce the amount of damages awarded to Long and she was unable to emphasize Long's negligence to the exclusion of her own. Severance of the counterclaim from the main action did not cure this prejudice because Holmes was bound by the damage award made by the jury to plaintiff Long. Finally, Holmes was surprised by the filing of the counterclaim, she was unrepresented by counsel as a defendant and had no time to prepare her defense or even notify her insurance carrier of the filing of the counterclaim.

In light of defendants' failure to offer a reasonable explanation for their delay in filing the counterclaim and the prejudice to plaintiff, we find that the trial court abused its discretion in granting leave to defendants to file a counterclaim for contribution on the sixth day of trial after plaintiffs had rested their case and after judgment had been entered against Holmes and in favor of defendants.

 █ The trial court held, and defendants assert on appeal, that the filing of their counterclaim was properly allowed as an amendment of the pleadings to conform to the proof. Section 2—616(c) of the Illinois Code of Civil Procedure provides that a pleading may be amended at any time, before or after judgment, to conform

the pleadings to the proofs. (Ill. Rev. Stat. 1987, ch. 110, par. 2—616(c).) Defendants argue that the counterclaim for contribution was simply an amendment to their special defense of comparative negligence which was necessitated by entry of the judgment against Holmes. We do not agree. Defendants' counterclaim was not filed to conform the pleadings to the proof. It was filed as an entirely new cause of action seeking affirmative relief from the counterdefendant. Furthermore, it was filed after judgment had been entered against Holmes. It has been held that, while a new cause of action may be added before judgment, adding a new cause of action after judgment is impermissible. *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 528, 395 N.E.2d 1143, 1151.

In any event, under the established guidelines set forth in *Lawing v. Chicago Transit Authority* (1986), 142 Ill. App. 3d 119, 124, 491 N.E.2d 145, 148, for determining when to allow a motion to amend pleadings to conform to the proof, we find that allowing such a motion in this case constituted an abuse of discretion. The factors to be considered in reaching such a determination include: (1) whether there were previous opportunities to amend; (2) whether the record shows no valid reason for the failure to make a timely amendment; and (3) whether the amendment is prejudicial or would alter the nature of proof required to defend the action. Applying these factors to the instant case, we find that allowing defendants to file their counterclaim for contribution as an amendment of the pleadings to conform to the proof was an abuse of the trial court's discretion.

Holmes also argues that defendants' counterclaim for contribution is barred under the Contribution Act because it was not filed in a "pending action." Section 5 of the Contribution Act provides that a cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action. (Ill. Rev. Stat. 1987, ch. 70, par. 305.) In *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939, our supreme court held that when an action is pending, the claim for contribution must be asserted therein or be barred. The parties dispute whether defendants' counterclaim for contribution was filed in a pending action because judgment had already been entered against Holmes and in favor of defendants. We find it unnecessary to decide this issue because we find that the trial court abused its discretion in granting leave to file the counterclaim, whether or not it was filed in a pending action.

Finally, in light of our decision that the trial court abused its discretion in granting defendants leave to file a counterclaim for contri-

bution and our reversal of that part of the trial court's judgment, we find it unnecessary to discuss the propriety of the trial court's severance of the counterclaim from the main part of the action.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

HARRISON and LEWIS, JJ., concur.