2025 IL App (2d) 230326-U
No. 2-23-0326
Order filed March 5, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| DARIUS KING, | ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-L-105 |
| EL PARAISO DEL PACIFICO, INC., d/b/a Taqueria El Paraiso, and P.A.A. PROPERTIES LLC, | ) ) ) ) | |
| Defendants | ) ) | Honorable Jorge L. Ortiz, |
| (P.A.A. Properties LLC, Defendant-Appellee). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in granting summary judgment in favor of defendant P.A.A. Properties LLC on the element of proximate cause. Therefore, we reverse and remand.

¶ 2   At issue in this appeal is whether the trial court erred in granting summary judgment in favor of defendant P.A.A. Properties LLC (PAA), on plaintiff Darius King's claim of negligence. Specifically, plaintiff contends that the trial court erred in granting summary judgment on the

contested factual issue of proximate cause. For the following reasons, we reverse the grant of summary judgment and remand the matter for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4      This case arises from a vehicle crash at Taqueria El Paraiso (the Taqueria or the premises) located at 14 North McAree Road in Waukegan. It is undisputed that, on August 9, 2020, King was a customer at the Taqueria when Melanie Sanders drove a vehicle through the wall and windows of the restaurant and struck and injured King.

¶ 5      King filed his initial complaint for negligence against Sanders and Alberto Leguizamo, the alleged owner and operator of the Taqueria. King ultimately settled with Sanders and dismissed Alberto by agreed order.

¶ 6      King's second-amended complaint was directed against only defendant El Paraiso Del Pacifico, Inc. (El Paraiso), alleging negligence. El Paraiso moved for summary judgment on the second-amended complaint.

¶ 7      Prior to responding to El Paraiso's motion, King filed a third-amended complaint, which named PAA as a defendant. King alleged that, at all relevant times, PAA was the owner and lessor of the premises and that, as the owner and lessor, it owed him a duty of care to take reasonable protective measures against an automobile crash like Sanders's accident. He alleged that both PAA and El Paraiso violated their duties of care for the safety of their customers in several ways: (1) maintaining parking spaces in relation to the front entrance of the restaurant so as to create a hazard to business invitees; (2) failing to provide adequate protective barriers to preclude a motor vehicle breaching into the inside of the restaurant; (3) failing to construct, operate, and maintain the seating area of the restaurant in a manner and location that patrons would be protected from inadvertent vehicle crashes; and (4) failing to prohibit parking in front of the restaurant.

¶ 8     On December 7, 2022, the trial court heard El Paraiso's motion for summary judgment, and it granted the motion on December 21, 2022. King appealed, and we reversed. *King v. El Paraiso Del Pacifico, Inc.*, 2024 IL App (2d) 230026, ¶¶ 56-57.

¶ 9     On February 10, 2023, while El Paraiso's appeal was pending, PAA moved for summary judgment on King's third-amended complaint on the basis that King failed to establish proximate cause. PAA argued that Sanders's "independent and intervening act" absolved it from liability. It also argued that plaintiff failed to provide evidentiary support that acts such as erecting protective barriers or prohibiting parking in front of the Taqueria would have prevented his injury. PAA did not argue that it lacked a duty of care toward King.

¶ 10     King provided a statement of additional material facts as follows. Pedro Leguizamo was the sole owner and managing member of PAA, and he had purchased the premises in 1997 and converted it into a Mexican restaurant, incorporating the restaurant as El Paraiso Del Pacifico, Inc. PAA leased the premises to El Paraiso, and Pedro's brother and sister operated the Taqueria and paid rent to PAA.

¶ 11     King's additional statement of material facts continued that PAA had installed bollards at other restaurants, including bollards at the nose of several parking spaces abutting the building of the La Flor restaurant in Elgin, and that the Taqueria had bollards in its parking lot around the trash enclosure to protect from commercial garbage trucks.[1] King stated that a motor vehicle accident at El Paraiso had occurred in 2005 or 2006, causing a crack in its rear brick wall. King further stated that vehicles can roll over wheel stops at speeds of less than five miles per hour, whereas

---

[1] In King's response to PAA's motion for summary judgment, he attached photographs as exhibits depicting bollards at La Flor and around the trash enclosure at the Taqueria.

safety barriers such as six-inch diameter steel bollards can stop a vehicle traveling at speeds of up to 27 miles per hour.

¶ 12    King responded to PAA's motion for summary judgment on June 9, 2023, arguing that PAA sought summary judgment solely on the issue of proximate cause and that he had adduced sufficient evidence to establish a triable issue of material fact on the issue of proximate cause. As an exhibit to his response, he attached the affidavit and report of Rob Reiter. Reiter averred as follows. He had been active for more than 25 years in the fields of perimeter security, pedestrian safety, protection of crowded spaces, and permanent and temporary means of protecting against accidental or deliberate vehicle incursions. He explained that bollards are posts typically made of steel and embedded vertically to prevent vehicles from crashing into pedestrians, buildings, or property. Storefront and public parking lot crashes occurred more than 36,000 times per year in the United States, with as many as 2,600 killed and 16,000 injured, and he specifically stated that vehicle-into-building crashes are common in Illinois and have occurred in Waukegan.

¶ 13    Reiter continued to aver that he had reviewed the facts of Sanders's crash into the Taqueria and prepared a report on the matter. He believed that wheel stops, such as those in front of the Taqueria, were ineffective and inadequate at stopping vehicles where a driver like Sanders presses the wrong pedal. Safety barriers, such as bollards or landscaping walls are "proven, common, and readily available in Illinois," and he opined that six-inch diameter steel bollards properly installed in front of the Taqueria would have stopped a vehicle like Sanders's Nissan Murano traveling at a speed of up to 27 miles per hour from breaching the storefront.

¶ 14    The other summary judgment materials included the traffic crash report, which indicated that Sanders was the driver of the Nissan Murano that crashed into the Taqueria on August 9, 2020. The reporting officer's narrative provided as follows:

"I made contact with *** Melanie Sanders. Melanie advised she was pulling into the parking spot in the front of the restaurant. Melanie advised she must have accidentally hit the gas instead of the brake. Melanie advised she struck someone inside the restaurant[.] I made contact with *** [King]. [King] advised he was ordering at the counter when he heard a loud crash and the vehicle came through the wall and struck him."

The crash report contained a diagram of the crash site. The diagram depicts five parking spaces on the east side of the premises, which is represented as a hexagon elongated along the north-south walls. The parking spaces abut the east side of the building and are oriented so that a vehicle would enter the parking space heading west toward the east side of the building. The vehicle in the diagram is depicted as having bypassed the endline of the second-most northern parking space and breached the east wall of the restaurant with the front of the car.

¶ 15 King also included the lease for the Taqueria. The lease is dated April 1, 2017, signed by Aide Leguizamo on behalf of the tenant[2] and Pedro Leguizamo on behalf of PAA as the landlord. The lease term ran to March 31, 2022. The lease provided that the use of the premises was "only for a restaurant" and that the tenant would have the responsibility to maintain the premises in good repair during the term of the lease and the obligation to conduct any construction or remodeling necessary to the use of the premises.

¶ 16 Pedro Leguizamo testified at his deposition as follows. He was the managing member of PAA. When he purchased the premises, the building was not occupied, and he renovated the

---

[2]Although the lease listed the tenant as Taqueria Paraiso Del Pacifico, Inc., we understand that the tenant was actually defendant El Paraiso Del Pacifico, Inc., d/b/a Taqueria El Paraiso.

building to make it a restaurant. He operated the Taqueria until sometime around 2007, when his brother and sister-in-law, Alberto and Aide,[3] took over its operations. Pedro stated that he and his wife sold the Taqueria to Alberto and Aide in 2008, although he later stated that it was not sold for money but instead was leased to Alberto and Aide for monthly rent payments.

¶ 17    When asked about the purpose of bollards at one of his restaurants, Pedro answered that "it's protection against a car going on—a car going in or going—going in." After a follow-up question, he agreed that bollards protected against a vehicle going into the building and could also protect against a vehicle going onto a sidewalk and injuring someone. At his La Flor restaurant, as part of a remodeling of the building, he had bollards installed between some parking spots and the building wall pursuant to an architect's plans. At the Taqueria, there were preexisting bollards around the trash corral, and he understood that their purpose was to prevent the garbage truck from knocking down the corral door. Pedro was aware of a prior vehicle accident where a car struck the back brick wall of the Taqueria and caused a crack in the wall.

¶ 18    Lastly, we summarize King's deposition transcript from January 18, 2022. At the time of his deposition, King was 30 years old and was employed at a food service company. Due to the accident at the Taqueria on August 9, 2020, he missed several months of work. He incurred serious injuries to his legs when Sanders's vehicle pinned him to the front counter of the restaurant, including fractures of his right femur, left tibia, and left fibula. King could not say how fast the car was traveling when it breached the restaurant, but "it was definitely a heavy impact, very strong and forceful." He had surgery on both legs, and he was in the hospital from August 9 to August

---

[3]In the deposition, she is referred to as Aida, but on the lease for the Taqueria she is listed as Aide and signed as Aide.

20, 2020. At the time of his deposition, King was able to walk, although not as easily as before the accident. He could no longer run like he could before the injury; he described his attempts to run as "Now I flop."

¶ 19 On August 8, 2023, the trial court heard PAA's motion for summary judgment. PAA argued that King had failed to create a genuine issue of material fact on whether it proximately caused his injuries, attacking Reiter's credentials and contending that he improperly asserted legal conclusions and failed to provide sufficient admissible evidence for trial. PAA further argued that, at most, it furnished a condition that made Sanders's accident possible, but her act of pressing the accelerator instead of the brake pedal was an independent act that constituted an intervening cause and broke the causal connection between PAA's acts or omissions and King's injuries.

¶ 20 King responded that the pertinent question was whether it was foreseeable that a driver like Sanders would have an accident by driving into the storefront, and that, based on the evidence in this case and the relevant case law, it was foreseeable. King cited Reiter's affidavit and opinions, including that Pedro Leguizamo had bollards at other restaurants he owned but not at the Taqueria.

¶ 21 On September 12, 2023, the trial court granted summary judgment in favor of PAA. Citing and agreeing with numerous out-of-state decisions, the trial court stated that landowners are not insurers of their invitees' safety and that landowners are not liable for injuries caused to business invitees by out-of-control drivers because such incidents are unforeseeable as a matter of law. The trial court also found that Reiter's affidavit and report failed to comply with Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013). It explained that many of Reiter's assertions lacked foundation and that Reiter repeatedly drew conclusions that the accident was foreseeable, which was an improper legal conclusion. The court continued that, regardless of its deficiencies, Reiter's affidavit did not provide sufficient evidence of foreseeability to establish proximate cause. The court concluded

that it was "not willing to find that this event was foreseeable" and it would be an unreasonable burden on PAA to know which type of barrier to place to protect against such an event.

¶ 22    This timely appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    King argues that the trial court erroneously granted summary judgment in favor of PAA on the issue of proximate cause. He contends that Sanders's accident was both foreseeable and preventable and that Reiter's affidavit and report created a triable issue of material fact on the element of proximate cause. PAA responds that King failed to present evidence that prohibiting building-adjacent parking would have prevented his injuries; that the intervening-cause defense was available to defeat King's negligence claim; that Reiter's affidavit was deficient and his opinions speculative; and that PAA complied with applicable ordinances regarding parking lots and barriers.

¶ 25    Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, affidavits, and admissions on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). A genuine issue of material fact exists where the material facts are disputed, or when the material facts are undisputed but reasonable persons can draw different inferences from the facts. *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 15. Summary judgment is a drastic measure and should be granted only when the movant is clearly entitled to judgment. *Id.* We review a grant of summary judgment *de novo*. *U.S. Bank N.A. v. Gold*, 2019 IL App (2d) 180451, ¶ 7.

¶ 26    We first note that PAA's summary judgment motion was limited to the negligence element of proximate cause. See generally *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22 (in a negligence action, a plaintiff must establish that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff). Accordingly, our disposition is limited to whether summary judgment was appropriate on the issue of proximate cause.

¶ 27    In King's prior appeal from summary judgment entered in favor of defendant El Paraiso, we decided several issues relevant to this appeal. First, Sanders's act of driving her vehicle into the Taqueria was not an intervening act, *i.e.*, it was not a superseding cause of King's injuries as a matter of law. *King*, 2024 IL App (2d) 230026, ¶¶ 23-33. Second, expert testimony was not required to survive summary judgment. *Id.* ¶¶ 34-39 (stating that a jury does not require expert testimony to understand that bollards can protect against wayward vehicles, that sturdier walls can prevent vehicle incursions, or that prohibiting parking in front of the building can prevent an accident such as Sanders's when she tried to pull into a spot directly in front of the restaurant). Third, assuming a breach of duty as alleged by King, those breaches "would not be mere conditions making King's injuries possible" but instead "they would be material and substantial elements in bringing about his injuries." *Id.* ¶¶ 48-53. Finally, King provided sufficient evidence to create a triable issue of fact on the element of proximate cause against El Paraiso. *Id.* ¶¶ 45-47 (the evidence included the traffic crash report indicating that Sanders attempted to pull into a parking space directly in front of the Taqueria, and a jury could find that prohibiting parking directly in front of the building or installing protective barriers in front of the building could have prevented Sanders's accidental vehicle incursion into the Taqueria).

¶ 28    We will not revisit these questions. The only potentially significant difference in the facts of this appeal is the position of PAA as the lessor of the premises. However, the parties have not disputed or litigated whether PAA owed King a duty of care in its position as the landlord, only whether an assumed breach of PAA's duty could constitute a proximate cause of King's injuries. In fact, the third-amended complaint alleged the same acts and omissions proximately causing King's injuries against both PAA and El Paraiso: (1) maintaining parking spaces in relation to the front entrance of the restaurant so as to create a hazard for business invitees; (2) failing to provide adequate protective barriers to prevent motor vehicles from accidentally crashing into the seating area of the restaurant; (3) failing to construct, operate, and maintain the seating area in a manner and location protected from inadvertent vehicle crashes; and (4) failing to prohibit vehicle parking in front of the restaurant. Thus, we have no reason to depart from our proximate cause analysis in King's prior appeal.

¶ 29    Regarding Reiter's affidavit, even if the trial court properly disregarded the affidavit, we have already held that expert testimony was unnecessary to create a triable issue of fact on proximate cause under the facts of this case. *Id.* ¶ 39. In addition to the sufficient evidence King adduced in conjunction with El Paraiso's motion for summary judgment, including the traffic crash report and photographs of the scene, King provided Pedro Leguizamo's deposition in response to PAA's motion. Pedro admitted to installing bollards at another restaurant he owned and having bollards around the trash corral at the Taqueria, and he understood the purpose of bollards was to prevent vehicle incursions. Moreover, he was aware of a separate vehicle crash at the Taqueria, where a vehicle struck the back brick wall of the restaurant. These facts further support the foreseeability of a motor vehicle accident at the Taqueria and that readily available measures—

like bollards or a sturdier front wall—existed to prevent or reduce the risk of harm to business invitees posed by the negligent acts of third-party drivers.

¶ 30    We also reject the contention that PAA's compliance with local ordinances precludes a finding of proximate cause on King's negligence claim. See *Vancura v. Katris*, 238 Ill. 2d 352, 377 (2010) (explaining that compliance with a statute does not preclude a finding of negligence; "the mere existence of a statute establishing legal duties *** does not foreclose the possibility of a common law negligence action based on an extra-statutory duty of care"); *Belvidere National Bank & Trust Co. v. Leisher*, 83 Ill. App. 3d 179, 186 (1980) ("Although violation of statutes, ordinances[,] or codes is conclusive to show defendant's breach of duty (leaving only the question of proximate cause), compliance with codes and safety regulations is not conclusive evidence on the question of negligence."). PAA's alleged compliance with local ordinances, including the use of wheel stops, would not be conclusive on the element of duty, much less on the disputed element of proximate cause.

¶ 31    In sum, there is no dispute that business invitees like King are generally owed a duty of care to protect against the negligent acts of third parties, including foreseeable motor vehicle accidents. *King*, 2024 IL App (2d) 230026, ¶ 29 (relying on *Marshall v. Burger King Corp.*, 222 Ill. 2d 422 (2006)). We have already decided that the facts of this case created a triable issue on the element of proximate cause with respect to El Paraiso, and we have no basis to hold differently here with respect to PAA. We note that, because the parties have not raised or litigated the issues, we offer no opinion on whether PAA owed defendant a duty of care in its position as lessor or whether it breached its duty of care as alleged; we hold only that, under the facts of this case, the trial court erred in granting summary judgment on the element of proximate cause.

¶ 32    Accordingly, the trial court's grant of summary judgment in favor of PAA is reversed.

¶ 33                              III. CONCLUSION

¶ 34    For the reasons stated, we reverse the Lake County circuit court's grant of summary

judgment and remand for further proceedings.

¶ 35    Reversed and remanded.